(361 P.3d 771)
No. 109,208

In the Interest of N.A.C.

Opinion filed December 6, 2013.

*Lynnette A. Herrman*, of Beall & Mitchell, L.L.C., of Wichita, for appellants H.G. and D.G.

*Kellie E. Hogan*, of Kansas Legal Services, for appellees S.D. and D.D.

Before MALONE, C.J., McANANY and STANDRIDGE, JJ.

STANDRIDGE, J.: H.G. and D.G. (Maternal Cousins) appeal from the district court's order (1) finding that the Department of Social and Rehabilitation Services (SRS) failed to make reasonable efforts or progress toward finding an adoptive placement for N.A.C., (2) removing N.A.C. from the custody of SRS for adoptive placement, and (3) granting custody directly to S.D. and D.D. (Foster Parents) with court approval to adopt. For the reasons stated below, we conclude the court's finding regarding the lack of reasonable efforts by SRS toward finding an adoptive placement is not supported by substantial competent evidence, which in turn divested the court of its legal authority to remove N.A.C. from SRS custody for adoptive placement or grant legal custody directly to Foster Parents for adoption. Accordingly, we reverse the district court's finding regarding reasonable efforts, vacate the court's orders regarding custody, and remand the cause while the Department for Children and Families proceeds with and finalizes adoption placement. (The Department of Social and Rehabilitation Services was reorganized and renamed as the Department for Children and Families on July 1, 2012. For purposes of this opinion, we shall refer to the agency as SRS throughout.)

FACTS

On November 2, 2011, Mother gave birth to N.A.C. on the side-

walk in front of a sandwich shop in Wichita, Kansas. N.A.C. was born 6 weeks premature, weighed less than 5 pounds, and tested positive for cocaine. N.A.C. was placed into police protective custody that same day.

On November 4, 2011, the district court filed an ex parte order placing N.A.C. in the protective custody of SRS. Later that day, the State filed a petition seeking to adjudicate N.A.C. as a child in need of care. The petition alleged that Mother had a history of substance abuse and prostitution and that other children previously had been removed from her care. After proper notice was provided to all known interested parties, a temporary custody hearing was held on November 7, 2011, and the court placed N.A.C. in the temporary custody of SRS for out-of-home foster care placement. Thereafter, SRS moved N.A.C. to a foster care placement with Foster Parents, and the case was referred to Youthville for management.

In late November 2011, Maternal Cousins, who lived in Idaho, contacted Youthville and advised the social worker in the foster care unit working on N.A.C.'s case that they were interested in adopting N.A.C. Youthville informed Maternal Cousins that before N.A.C. could be placed with them for purposes of adoption, an Interstate Compact on the Placement of Children (ICPC) request formally seeking an adoption placement would need to be made by Kansas and approved by Idaho. Youthville further informed Maternal Cousins that the ICPC process for *adoption* placement (as opposed to a *foster care* placement) could not be pursued until parental rights were terminated.

On December 1, 2011, the court held a hearing at which it adjudicated N.A.C. a child in need of care. A disposition hearing was held on January 5, 2012. The journal entry of disposition ordered N.A.C. to remain in the custody of SRS for out-of-home foster care placement until further written order of the court. With regard to permanency, the journal entry required SRS and Youthville to ensure the biological parents received the services necessary to reintegrate N.A.C. into a parental home. At the same time, the court scheduled an April 3, 2012, termination of parental rights hearing

and authorized Youthville to begin working on the ICPC paperwork for Maternal Cousins.

The State filed a motion to terminate parental rights on February 8, 2012. After the motion to terminate was filed, but before the April 3, 2012, hearing on that motion, Youthville began working on the ICPC paperwork necessary to request that Idaho conduct a courtesy home study and evaluation of Maternal Cousins in anticipation of an ICPC request to approve them as an adoptive resource for N.A.C. The April 3, 2012, termination hearing was held as scheduled, and the district court orally granted the motion to terminate parental rights as to Mother and any known or unknown father. On April 10, 2012, however, it appears the district court received notice that Mother intended to relinquish her parental rights, which apparently caused a delay in filing the journal entry terminating parental rights that was needed in order to pursue the ICPC process for adoption placement.

On May 3, 2012, the court filed a journal entry documenting its decision to terminate parental rights, but it specifically stayed the findings and rulings as to Mother for a period of 10 days (to May 13, 2012) pending receipt of Mother's voluntary relinquishment. The journal entry specifically ordered N.A.C. to "be placed in the custody of SRS for adoption proceedings, under K.S.A. 38-2270."

A post-termination permanency hearing was held on May 17, 2012, 4 days after the stay on the journal entry terminating parental rights was lifted. At this hearing, the district court found that SRS was making reasonable efforts toward adoption, noting that "[a] possible relative resource has been found in Idaho and the ICPC process will start soon. In addition, the foster parents are interested in adopting [N.A.C.]"

In early June 2012, Youthville received a certified copy of the journal entry terminating parental rights and granting SRS custody for adoption placement under K.S.A. 2012 Supp. 38-2270. The case was reassigned to an adoption worker, who in turn finalized and transmitted the ICPC paperwork necessary for Idaho to determine whether Maternal Cousins were an appropriate adoptive resource for N.A.C. Youthville received notice on August 6, 2012,

that Idaho authorities had approved Maternal Cousins as an adoptive placement for N.A.C.

On August 27, 2012, Youthville held a best interests staffing to determine N.A.C.'s adoptive resource. By unanimous decision, Youthville selected Maternal Cousins as the adoptive placement. Foster Parents objected to the decision and requested a review. A second staffing was held, and Youthville again selected Maternal Cousins as the adoptive placement.

On September 28, 2012, Foster Parents filed a pleading titled "Motion to Find No Reasonable Efforts" asking the court to find that SRS had failed to make reasonable efforts or progress toward placement of N.A.C. with Maternal Cousins for adoption, and to enter an order removing N.A.C. from SRS custody for adoptive placement and granting legal custody of N.A.C. to Foster Parents for adoption. See K.S.A. 2012 Supp. 38-2264(h) (if court determines, after terminating parental rights, that reasonable efforts or progress have not been made toward finding adoptive placement with fit and willing relative, court may rescind prior custody and adoption orders).

On November 5, 2012, the district court held an evidentiary hearing on Foster Parents' motion. At the end of the hearing, the court concluded Youthville had not made reasonable efforts under K.S.A. 2012 Supp. 38-2264(h) to find an adoptive placement for N.A.C. with a fit and willing relative. With regard to custody, the court found the adoption staffing team erroneously considered only the fact that Maternal Cousins were blood relatives in selecting them as the adoptive placement and failed to consider the effect on N.A.C. if the bond with the only family she had known during the first year of her life was destroyed by making such a placement. Relying on its discretionary authority under K.S.A. 2012 Supp. 38-2264(h) to rescind a prior custody or adoption order after parental rights have been terminated based on a finding that the custodial agency has failed to make reasonable efforts or progress toward finding an adoptive placement with a fit and willing relative, the court thereafter removed N.A.C. from SRS custody and placed her directly with Foster Parents in order to allow them to pursue an independent adoption. The journal entry was filed on November

29, 2012. The court granted interested party status to Maternal Cousins for purposes of appealing the rulings in its decision.

Foster Parents promptly filed a petition for adoption of N.A.C. and, although it was filed in probate court, the juvenile judge presiding over the child in need of care (CINC) matter granted the final decree of adoption in favor of Foster Parents on December 21, 2012.

ANALYSIS

Maternal Cousins appeal from the district court's November 5, 2012, order. Before this court can address the underlying merits of the issues presented on appeal, we first must determine whether we have jurisdiction over the subject matter presented and, if we do, whether the issues presented have been rendered moot by the decree of adoption in favor of Foster Parents entered while this appeal was pending.

I. *Jurisdiction*

Whether jurisdiction exists is a question of law over which an appellate court has unlimited review. *Frazier v. Goudschaal,* 296 Kan. 730, 743, 295 P.3d 542 (2013). The right to appeal is entirely statutory and is not contained in the United States Constitution or Kansas Constitution. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Harsch v. Miller,* 288 Kan. 280, 287, 200 P.3d 467 (2009). Consequently, if the record shows that the appellate court does not have jurisdiction, the appeal must be dismissed. *Kansas Medical Mut. Ins. Co. v. Svaty,* 291 Kan. 597, 609, 244 P.3d 642 (2010).

"An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." K.S.A. 2012 Supp. 38-2273(a). The district court granted Maternal Cousins interested party status, so they have standing to appeal. But in order for this court to have subject matter jurisdiction over Maternal Cousins' appeal, the order being appealed must be one of the specified orders listed in K.S.A. 2012 Supp. 38-2273(a). In this case, the

order being appealed concluded SRS—by and through Youthville as its contracting agent—did not make reasonable efforts to find a relative to adopt N.A.C., removed N.A.C. from the legal custody of SRS for adoptive placement, and granted legal custody of N.A.C. directly with Foster Parents for adoption. Thus, we must determine whether this order qualifies as an order of temporary custody, adjudication, disposition, finding of unfitness, or termination of parental rights.

In making this determination, we find it helpful to begin our analysis by providing a brief overview of the legal process for terminating parental rights in Kansas. This process is set forth in the Revised Kansas Code for Care of Children (Code), K.S.A. 2012 Supp. 38-2201 *et seq.*, and is initiated upon the filing of a petition that alleges a child to be a child in need of care. Once a CINC petition is filed, the case evolves based on individual circumstances that may or may not develop in the case. The statutory scheme that governs this evolution is summarized below, prefaced by two statutory definitions that also are relevant to our analysis.

Custody. The term "custody" is defined in the Code to mean "the status created by court order or statute which vests in a custodian, whether an individual or an agency, the right to physical possession of the child and the right to determine placement of the child, subject to restrictions placed by the court." K.S.A. 2012 Supp. 38-2202(h).

Placement. The term "placement" is defined in the Code to mean "the designation by the individual or agency having custody of where and with whom the child will live." K.S.A. 2012 Supp. 38-2202(z).

Temporary Custody. Upon notice and hearing, the district court is authorized to enter an order of temporary custody, which shall remain in effect until modified or rescinded by the court or until an order of adjudication is entered but shall not remain in effect for more than 60 days unless good cause is shown. K.S.A. 2012 Supp. 38-2243(g)(2).

Adjudication. Adjudication is the process of deciding whether the State has presented clear and convincing evidence to establish that a child is a "child in need of care," as that term is defined by

statute. See K.S.A. 2012 Supp. 38-2202(d); K.S.A. 2012 Supp. 38-2250; K.S.A. 2012 Supp. 38-2251.

Disposition. After proper notice and due consideration of evidence presented by all interested parties at an evidentiary hearing, the district court is authorized to enter an order of legal custody, which continues until further order of the court. K.S.A. 2012 Supp. 38-2254; K.S.A. 2012 Supp. 38-2255.

Rehearing. After the entry of any dispositional order, the district court may reconsider the matter of legal custody on its own motion or the motion of a party or interested party. Upon proper notice and rehearing, the court may rescind any prior dispositional order and make any other dispositional order authorized by the Code, with one stated exception. K.S.A. 2012 Supp. 38-2256.

Permanency Review before Termination. The district court conducts permanency hearings to assess progress in achieving goals set forth in permanency plans. If the court finds reintegration is no longer a viable alternative and adoption might be in the best interests of the child, the county attorney must file a motion to terminate parental rights within 30 days of that finding, and the court must set a hearing within 90 days of that filing. K.S.A. 2012 Supp. 38-2264(g).

Termination. The district court may enter an order terminating parental rights upon a finding by clear and convincing evidence that a parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child, that the conduct or condition is unlikely to change in the foreseeable future, and that such termination is in the best interests of the child. K.S.A. 2012 Supp. 38-2269(a).

Custody for Adoption. When parental rights have been terminated and it appears to the district court that adoption is a viable alternative, the court shall either (1) enter an order granting custody of the child to SRS for adoption placement or (2) enter an order granting custody of the child to proposed adoptive parents and consenting to the adoption of the child by the proposed adoptive parents. K.S.A. 2012 Supp. 38-2270(a).

Permanency Review after Termination. After the district court enters an order terminating parental rights, the court shall continue

to hold permanency hearings until an adoption has been accomplished. If the court determines that reasonable efforts or progress have not been made toward finding an adoptive placement with a fit and willing relative, the court may rescind its prior orders of custody for adoption placement and make other orders regarding custody and adoption that are appropriate under the circumstances. K.S.A. 2012 Supp. 38-2264(h).

It is within this statutory scheme that the district court in this case issued the following orders:

11/7/2011: Order placing N.A.C. in the temporary legal custody of SRS.
*(Order of Temporary Custody, K.S.A. 2012 Supp. 38-2243)*

12/1/2011: Order adjudicating N.A.C. a child in need of care.
*(Order of Adjudication, K.S.A. 2012 Supp. 38-2251)*

1/5/2012: Order placing N.A.C. in the legal custody of SRS.
*(Order of Disposition, K.S.A. 2012 Supp. 38-2255)*
Order requiring SRS to continue providing reintegration services.
*(Permanency Hearing, K.S.A. 2012 Supp. 38-2264)*

4/3/2012: Oral ruling from the bench terminating parental rights
*(Termination of Parental Rights, K.S.A. 2012 Supp. 38-2269)*

5/3/2012: Journal entry filed terminating parental rights.
*(Termination of Parental Rights, K.S.A. 2012 Supp. 38-2269)*
Order placing N.A.C. in the legal custody of SRS for adoption.
*(Custody for Adoption, K.S.A. 2012 Supp. 38-2270)*

5/17/2012: Order finding SRS was making reasonable efforts to find adoptive placement with a fit and willing relative.
*(Permanency Hearing, K.S.A. 2012 Supp. 38-2264)*

11/5/2012: Order finding SRS failed to make reasonable efforts or progress to find adoptive placement with a fit and

willing relative, removing N.A.C. from legal custody of SRS for adoptive placement, and placing N.A.C. in the legal custody of Foster Parents for adoption. *(Permanency Hearing, K.S.A. 2012 Supp. 38-2264)* *(Rehearing on Order of Disposition, K.S.A. 2012 Supp. 38-2256)* *(Custody for Adoption, K.S.A. 2012 Supp. 38-2270)*

When we assess the substantive effect of the November 5, 2012, order against the legal framework provided by the Code, we necessarily must conclude that it qualifies as an order of disposition. Although the term "disposition" is not defined in the general definitional section of the Code, the statutes that govern the district court's actions in this regard make clear that an order of disposition is one that places a child in, continues a child in, or removes a child from the legal custody of an individual or agency. In this case, there is no dispute that the court's order of November 5, 2012, removed N.A.C. from the legal custody of SRS and thereafter placed N.A.C. in the legal custody of Foster Parents, with permission to pursue an independent adoption. Because both of these orders impact legal custody of the child at issue, they are both orders of disposition. And because they are both orders of disposition, they are both appealable orders under K.S.A. 2012 Supp. 38-2273(a).

Foster Parents do not appear to object in their brief to the first part of our assessment, which construes a dispositional order to be one that impacts legal custody of a child. Instead, Foster Parents focus on the second part of our assessment, which holds that any dispositional order authorized by the Code is an appealable order under K.S.A. 2012 Supp. 38-2273(a). Specifically, Foster Parents argue that only *one* order of disposition in each case is subject to appeal under K.S.A. 2012 Supp. 38-2273(a). In support of this argument, Foster Parents rely on several prior decisions issued by other panels of this court. See *In re C.E.*, 47 Kan. App. 2d 442, 448, 275 P.3d 67 (2012); *In re J.W.*, No. 107,839, 2012 WL 5205749 (Kan. App. 2012) (unpublished opinion); *In re E.W.*, No. 101,910, 2009 WL 5063416 (Kan. App. 2009) (unpublished opinion). As Foster Parents correctly assert, each of these panels held

as a matter of law that the only order of disposition subject to appeal under K.S.A. 2012 Supp. 38-2273(a) is that *one* order of disposition entered at the time of, or within 30 days after, adjudication. In support of this conclusion of law, each of these panels cited K.S.A. 2012 Supp. 38-2253 (or an earlier version), which in the context of describing the purpose and timing of a dispositional hearing, provides:

"An order of disposition may be entered at the time of the adjudication if notice has been provided pursuant to K.S.A. 2012 Supp. 38-2254, and amendments thereto, *but shall be entered within 30 days following adjudication*, unless delayed for good cause shown." (Emphasis added.) K.S.A. 2012 Supp. 38-2253(b).

But this interpretation of the language in K.S.A. 2012 Supp. 38-2253(b) is inconsistent with the plain and unambiguous language of the specific statute at issue, the provisions of related statutes within the Code, and the underlying purpose for including such a time frame within the statute. First, the language in K.S.A. 2012 Supp. 38-2253(b) provides that *an* order of disposition must be entered within 30 days following adjudication, not *the* order of disposition. By using the word *an* instead of the word *the*, the legislature intentionally left open the possibility that the court may enter another order of disposition at a later date. Our conclusion in this regard is soundly supported by the fact that the legislature deliberately included a related statute in the Code that expressly permits the district court to enter one or more new orders of disposition at any point in the case, regardless of how many dispositional orders already have been entered. Specifically, K.S.A. 2012 Supp. 38-2256 authorizes the court to rehear any order of disposition on its own motion or the motion of any party or interested party, after which the court may enter any dispositional order authorized by the Code, with an exception that is not relevant here. In addition to K.S.A. 2012 Supp. 38-2256, the legislature also affirmatively and expressly authorizes the court in K.S.A. 2012 Supp. 38-2264(f) to "rescind any of its prior dispositional orders and enter any dispositional order authorized by this code" upon a finding by the court that reintegration continues to be a viable alternative.

If we were to follow the holdings of the prior panels cited by Foster Parents, we necessarily would have to presume that the

legislature intended the initial order of disposition referenced in K.S.A. 2012 Supp. 38-2273(a) to fall within the scope of appellate review but for some unexplained reason did not intend subsequent orders of disposition—although expressly authorized by K.S.A. 2012 Supp. 38-2256 and K.S.A. 2012 Supp. 38-2264(f)—to fall within the scope of appellate review. We find no reason for the legislature to have made such a distinction and do not believe the legislature intended the inconsistent and unreasonable result that would be produced if such a distinction were made. See *Kansas One-Call System v. State*, 294 Kan. 220, 233, 274 P.3d 625 (2012) (appellate court's duty, as far as practicable, is to harmonize different statutory provisions within a particular act to make them consistent, harmonious, and sensible).

Moreover, the interpretation of the language in K.S.A. 2012 Supp. 38-2253(b) by other panels of our court as limiting the appeal of a dispositional order to the one entered within 30 days of adjudication is also inconsistent with the underlying purpose for including such a time frame within that statute. The time frames prescribed by the Code are included in the statutes to ensure that a severance case is expeditiously resolved and to protect parties from unreasonable delay. *In re B.H.*, 32 Kan. App. 2d 12, 18, 80 P.3d 396 (2003). Given the procedural chronology of a CINC case as summarized above, the only order of custody in place at the time of adjudication is one that is temporary. If the court ultimately adjudicates a child to be a child in need of care, an order placing the child in permanent custody for purposes of foster care placement necessarily becomes the most urgent need in serving the best interests of the child; thus, the statute describing the purpose and timing of a dispositional hearing (as opposed to the statute describing authorized dispositions) requires that the first order of disposition be entered within 30 days following adjudication.

To interpret this 30-day deadline as a rule limiting the appeal of a dispositional order to only the one entered within 30 days of adjudication would do little to further the objective of protecting the child's welfare and serving the best interests of the State. See *In re B.H.*, 32 Kan. App. 2d at 18 (rigid interpretation of Code would do little to further the objective that each child shall receive

the care, custody, guidance, control, and discipline, preferably in child's own home, as will best serve child's welfare and best interests of the State). Notably, after concluding that the legislature intended these time frames to be liberally construed to accomplish the objective of protecting the child's welfare and serving the best interests of the State, the court in *In re B.H.* held the statutory language regarding the 30-day time limitation for dispositions of a child in need of care to be directory, not mandatory.

Finally, we note that the line of cases cited by Foster Parents evolved without distinguishing the contrary holding of a published case from a prior panel of our court. See *In re T.D.W.*, 18 Kan. App. 2d 286, 288, 850 P.2d 947 (1993). In *In re T.D.W.*, the State filed an appeal from a decision of the district court denying its motion to terminate parental rights. The appellees argued this court did not have appellate jurisdiction over an order *denying* a motion to terminate parental rights. Writing for a unanimous panel, Chief Judge Mary Beck Briscoe concluded that the court's order was appealable because it was made in conjunction with a court order that the children continue in the legal custody of SRS, which qualifies as an order of disposition under K.S.A. 1992 Supp. 38-1563 (a previous version of K.S.A. 2012 Supp. 38-2255).

Considering the specific language set forth within K.S.A. 2012 Supp. 38-2253(b), the other statutes within the statutory scheme as a whole, the underlying purpose for including a deadline before which an initial order of disposition should be filed, and the court's analysis in *In re T.D.W.*, 18 Kan. App. 2d at 288, we hold that a dispositional order subject to appeal under K.S.A. 2012 Supp. 38-2273(a) includes an order of disposition entered within 30 days following adjudication *as well as any other dispositional order authorized by the Code*. We readily acknowledge that our decision today directly conflicts with the decisions reached by the other panels of our court upon which Foster Parents rely. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (panels of Kansas Court of Appeals not bound by prior rulings of another panel). "While we must carefully consider each precedent cited to us, we also must uphold our duty to correctly determine the law in each case that comes before us. In doing so, we sometimes find that we

must respectfully disagree with the opinion of another panel." *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012).

Turning now to the November 5, 2012, order, we already have found the court's orders removing N.A.C. from the legal custody of SRS and thereafter placing N.A.C. in the legal custody of Foster Parents are both orders impacting legal custody of the child at issue and thus are both orders of disposition. See K.S.A. 2012 Supp. 38-2256 (after entry of any dispositional order, court may rehear matter on its own motion or motion of any party or interested party, after which court may enter any dispositional order authorized by Code); K.S.A. 2012 Supp. 38-2264(h) (if court determines that reasonable efforts or progress have not been made toward finding adoptive placement or appointment of permanent custodian or placement with fit and willing relative, court may rescind its prior orders and make others regarding custody and adoption that are appropriate under circumstances); K.S.A. 2012 Supp. 38-2270(a) (when parental rights have been terminated and it appears to court that adoption is viable alternative, court shall either [1] enter order granting custody of child to SRS for adoption placement or [2] enter order granting custody of child to proposed adoptive parents and consenting to adoption of child by proposed adoptive parents). And because they are both orders of disposition, they are both appealable orders under K.S.A. 2012 Supp. 38-2273(a).

But what about the court's finding that SRS failed to make reasonable efforts to find an adoptive placement under K.S.A. 2012 Supp. 38-2264? We acknowledge that, standing alone, the court's finding in this regard does not qualify as an order of disposition. But the district court made clear that it entered its order changing legal custody from SRS to Foster Parents in this case pursuant to the authority conferred to it under K.S.A. 2012 Supp. 38-2264(h), which provides:

"If the court determines that reasonable efforts or progress have not been made toward finding an adoptive placement or appointment of a permanent custodian or placement with a fit and willing relative, the court may rescind its prior orders and make others regarding custody and adoption that are appropriate under the circumstances."

Based on this language, the court's finding regarding SRS's failure to make reasonable efforts to find an adoptive placement for N.A.C. with a fit and willing relative provided both the factual basis and the conferring authority for its order of disposition changing legal custody from SRS to Foster Parents. As a result, we conclude the court's findings regarding reasonable efforts and its orders of disposition changing custody are issues so interwoven that they are legally inseparable; that is, we cannot review the court's order changing legal custody from SRS to Foster Parents without first reviewing the court's finding that SRS failed to make reasonable efforts to find an adoptive placement for N.A.C. with a fit and willing relative. Given the legally inseparable nature of the rulings issued, we construe the court's November 5, 2012, order in its entirety to qualify as an order of disposition subject to appeal under K.S.A. 2012 Supp. 38-2273(a).

## II. *Mootness*

At oral argument, counsel for both parties acknowledged that while this appeal was pending, Foster Parents filed a petition for adoption of N.A.C. and the Sedgwick County District Court subsequently granted the petition and entered a decree of adoption. With respect to the court's decision in this regard, the parties individually and separately represented to the court at oral argument their understanding that when Foster Parents' petition for adoption was granted the decree of adoption would be rendered null and void if the district court's reasonable efforts decision, and in turn the custody decisions, were reversed on appeal.

Notwithstanding the parties' understanding as stated at oral argument that the decree of adoption would be rendered null and void if the district court's reasonable efforts and custody decisions were reversed on appeal, this court still had some concern that the present appeal may be moot. In other words, even if we reversed the district court's decision that SRS failed to make reasonable efforts and progress toward finding an adoptive placement for N.A.C. with a fit and willing relative, we still had some concern that such a reversal could be ineffectual for any purpose in light of the fact that Foster Parents already had adopted N.A.C. As such,

we ordered the parties to show cause why this appeal should not be dismissed as moot. Both parties filed written responses citing applicable legal authority, and Foster Parents included a file-stamped copy of the final decree of adoption of N.A.C. We are now ready to rule on the issue of mootness.

An appellate court generally does not decide moot questions or render advisory opinions. Thus, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatsoever to a prevailing party, we should dismiss the case as moot rather than issue an advisory opinion. See *Smith v. Martens*, 279 Kan. 242, 244-45, 106 P.3d 28 (2005). In this case, however, we conclude the issues presented on appeal are matters over which we are still able to grant effectual relief. Specifically, the issues here are whether there is substantial competent evidence to support the district court's finding that SRS failed to make reasonable efforts and progress to find an adoptive placement for N.A.C. with a fit and willing relative and whether the court abused its discretion in changing legal custody from SRS to Foster Parents for the stated purpose of allowing Foster Parents to pursue an independent adoption. Given the district court granted Maternal Cousins interested party status for the purpose of appealing these issues, we are not persuaded that the district court had jurisdiction to finalize the adoption while that appeal was pending.

The Kansas Supreme Court has recognized that a district court typically loses jurisdiction over the entire civil case when the docketing statement is filed with the Clerk of the Appellate Courts. See *ARY Jewelers v. Krigel*, 277 Kan. 464, 473-74, 85 P.3d 1151 (2004). Under the Code, however, the district court continues to have jurisdiction over all issues in the case that are *not* specifically appealed while a case is on appeal from the district court. K.S.A. 2012 Supp. 38-2273(f). Nevertheless, the Code permits the district court to modify a decision that is being reviewed on appeal *so long as* the modification is temporary in nature, relates to the care and custody of the child, and is considered advisable by the court. K.S.A. 2012 Supp. 38-2274(b).

Once again, the order from which Maternal Cousins appeal granted legal custody of N.A.C. to Foster Parents for the stated

purpose of allowing Foster Parents to pursue an adoption based on a finding that SRS failed to make reasonable efforts and progress in pursuing Maternal Cousins as an adoptive resource. Under K.S.A. 2012 Supp. 38-2273(f), then, the district court continued to have jurisdiction over issues that were *not* related to the legal custody and adoption of N.A.C. But the decree of adoption entered by the court is indistinguishable in every respect from the issue of legal custody and adoption of N.A.C. currently on appeal; thus, the district court did not have jurisdiction to enter it. We acknowledge the district court had jurisdiction to modify its decision to grant legal custody of N.A.C. to Foster Parents for adoption so long as the modification was temporary in nature under K.S.A. 2012 Supp. 38-2274. But the decree of adoption was not temporary in nature. In sum, we find no legal authority in the Code to support a conclusion that the district court had the necessary jurisdiction to enter a final decree of adoption in favor of Foster Parents while this appeal was pending. Because the district court did not have the requisite subject matter jurisdiction, the final decree of adoption is a void judgment that can be vacated at any time. See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1024, 58 P.3d 1284 (2002) ("A judgment is void if the court that rendered it lacked subject matter jurisdiction . . . ."); *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 496, 781 P.2d 1077 (1989), *cert. denied* 495 U.S. 932 (1990) ("A void judgment is a nullity and may be vacated at any time.").

Notably, even if the district court did have jurisdiction to enter a final decree of adoption in favor of Foster Parents while this appeal was pending, we would still find the judgment void, and therefore a nullity, because the court acted in a manner inconsistent with due process in issuing the decree. See *In re Adoption of A.A.T.*, 287 Kan. 590, 598, 196 P.3d 1180 (2008), *cert. denied* 556 U.S. 1184 (2009) (judgment is void and therefore a nullity if court acted in manner inconsistent with due process). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). This court has unlimited review over the legal question of whether an individual's due process

rights were violated. *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 81, 209 P.3d 200 (2009).

Maternal Cousins argue the court's decision to enter a final decree of adoption while their appeal was pending deprived them of procedural due process to which they are entitled. We agree. On November 5, 2012, the district court granted legal custody of N.A.C. to Foster Parents for the stated purpose of allowing Foster Parents to pursue an adoption and immediately thereafter granted interested party status to Maternal Cousins for purposes of appealing that decision. The journal entry reflecting this judgment was filed on November 29, 2012. During an administrative review of the case by the district court on December 7, 2012, the district court noted: "An adoption has been filed by Kellie Hogan (12 AD 366) for [Foster Parents]. A social worker . . . has been appointed by the court in that case to do a home assessment. The Adoption is scheduled for December 21, 2012 at 8:30 a.m. in the Juvenile Department of the Court."

Although it appears from the decree of adoption that Foster Parents' petition for independent adoption was filed in the probate division, the juvenile judge presiding over the child in need of care matter was the same judge who presided over and ultimately granted the final decree of adoption in favor of Foster Parents on December 21, 2012. By entering a final decree of adoption in favor of Foster Parents while Maternal Cousins' appeal was pending, the district court effectively divested Maternal Cousins of the opportunity to exercise their legal right to challenge the court's decision regarding custody and adoption made just 7 weeks earlier.

The adoption of N.A.C. by Foster Parents is void, and therefore a nullity, because the district court lacked jurisdiction and acted in a manner inconsistent with due process in issuing the final order and decree. Accordingly, we conclude the issues presented in this appeal are not moot.

III. *The November 5, 2012, order*

Having resolved the issues presented regarding jurisdiction and mootness, we are ready to address the underlying claims made on appeal. Maternal Cousins assert the district court's finding regard-

ing lack of reasonable efforts or progress is not supported by substantial competent evidence, which in turn precluded the court from removing N.A.C. from the legal custody of SRS for adoptive placement and granting legal custody to Foster Parents for adoption. Even if the court's finding was supported by substantial competent evidence, Maternal Cousins claim the court abused its discretion in removing N.A.C. from the legal custody of SRS and granting legal custody to Foster Parents for adoption.

## A. *Reasonable efforts or progress*

The district court's finding that SRS failed to make reasonable efforts or progress to find an adoptive placement for N.A.C. with a fit and willing relative is a finding of fact. We review findings of fact to determine whether they are supported by substantial competent evidence. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

The district court's authority to assess the progress of a custodial agency in securing an adoption placement with a fit and willing relative comes into play only when there has been a termination of parental rights. When the court has entered an order terminating parental rights and it appears that adoption is a viable alternative, the court is required under K.S.A. 2012 Supp. 38-2270(a) to grant custody of the child either to an agency or to an individual for adoption. If the court grants custody to an agency, the custodial agency thereafter may give its consent for adoption without further consent of the court or any other entity or individual. K.S.A. 2012 Supp. 38-2270(a)(1). The court continues to maintain supervisory authority over the case even when the agency has been granted legal custody for adoption, however, because K.S.A. 2012 Supp. 38-2264(h) requires the court to conduct periodic permanency hearings to assess the progress being made toward adoption. If the court determines during a post-termination permanency hearing that the custodial agency has not made reasonable efforts or progress toward finding an adoptive placement with a fit and willing relative, the court may rescind its prior orders and make other

orders regarding custody and adoption that are appropriate under the circumstances. K.S.A. 2012 Supp. 38-2264(h).

Both the "reasonable efforts" and "reasonable progress" standards have been construed by prior panels of our court to encompass not only efficiency in finding a suitable adoptive placement with a suitable family member who is willing and able to take on the responsibility, but also to encompass consideration of all family members as potential adoptive resources in both a timely and consistent manner. *In re D.C.*, 32 Kan. App. 2d 962, 966, 92 P.3d 1138 (2004).

In concluding that SRS had not made reasonable efforts or progress to find an adoptive placement for N.A.C. with a fit and willing relative, the district court relied on the following findings of fact:

- N.A.C. was born in November 2011. From day one, it was reasonable to believe that this case was going to proceed to termination of parental rights.
- In November 2011, Maternal Cousins contacted Youthville.
- In December 2011, Mother's husband was eliminated as the putative father, and in January 2012, he was dismissed from the case.
- In March 2012, the court authorized Youthville to begin working on the ICPC paperwork for Maternal Cousins, but SRS made no effort to initiate visitation or establish a connection between N.A.C. and Maternal Cousins at that time.
- In April 2012, parental rights were terminated.
- SRS provided only excuses of bureaucracy for the delay in securing an adoptive placement for N.A.C. with Maternal Cousins.
- The August 27, 2012, best interests staffing to determine who should adopt N.A.C. was not held until almost a year after N.A.C. was placed with Foster Parents.
- The ICPC would not have been an obstacle to an adoptive placement of N.A.C. in Idaho with Maternal Cousins early on had SRS authorized a private home study in December 2011 or January 2012.

It appears from these findings, however, that the court may have overlooked a critical prerequisite associated with securing an adop-

tive placement (as opposed to a foster care placement) through the ICPC process when the court was deciding whether SRS had made reasonable efforts or progress to find an adoptive placement for N.A.C. with a fit and willing relative. Enacted by all 50 states, the District of Columbia, and the Virgin Islands, the ICPC is a uniform law that provides for cooperation between states in placing children who live in one state with prospective foster, guardian, or adoptive parents who live in another state. Klockau, *A Primer on Adoption Law*, 31 Fam. Advoc. 16, 19 (Winter 2009). In Kansas, the legislature enacted the ICPC as K.S.A. 38-1201 *et seq.*

Article III(b) of K.S.A. 38-1202 states that before an agency can send a child into another state for placement in foster care or for a possible adoptive placement, the agency must furnish the appropriate public authorities in the receiving state a written notice of intention to send the child. The written notice of intention must contain:

"1. The name, date and place of birth of the child.

"2. The identity and address or addresses of the parents or legal guardian.

"3. The name and address of the person, agency or institution to or with which the sending agency proposes to send, bring, or place the child.

"4. A full statement of the reasons for such proposed action and *evidence of the authority pursuant to which the placement is proposed to be made.*" (Emphasis added.) K.S.A. 38-1202, Art. III(b).

Thus, under K.S.A. 38-1202, Art. III(b)(4), if an agency seeks to send a child into another state for placement in foster care, that agency is required to send evidence to the receiving state that will prove such agency possesses the legal authority necessary to make a foster care placement for that particular child. Particularly relevant here, if an agency seeks to send a child into another state for a possible adoptive placement, subsection (4) requires that agency to send evidence to the receiving state that will prove such agency possesses the legal authority necessary to make an adoption placement for that particular child. In Kansas, the procedure utilized by courts to confer the legal authority necessary to make an adoption placement is set forth in K.S.A. 2012 Supp. 38-2270, under which the district court must either grant custody of a child to SRS for

adoption placement or grant custody directly to an individual for adoption in conjunction with termination of parental rights.

With these statutory requirements in mind, we turn to the facts of this case. As the district court noted in its November 5, 2012, order, everyone involved in the case reasonably believed from the beginning that it was going to proceed to termination of parental rights. As such, when Maternal Cousins contacted Youthville in late November 2011, to advise the agency that they were interested in adopting N.A.C., Youthville informed them that an ICPC request for an adoption placement would need to be made by Kansas and approved by Idaho before N.A.C. could be placed.

Based on the prerequisites for adoptive placement set forth in K.S.A. 38-1202, Art. III(b)(4), the information provided by Youthville to Maternal Cousins was entirely accurate in that the ICPC process for an adoption placement (as opposed to a foster care placement) could not be started until parental rights were terminated and proof of custody for adoption with the agency was in hand.

The State filed a motion to terminate parental rights on February 8, 2012. The hearing on that motion was scheduled for April 3, 2012. After the motion but before the hearing, Youthville began working on the ICPC paperwork necessary to request that Idaho conduct a courtesy home study and evaluation of Maternal Cousins as an adoptive resource for N.A.C. The April 3, 2012, termination hearing was held as scheduled, and the district court orally granted the motion to terminate parental rights as to Mother and any known or unknown father. On April 10, 2012, however, it appears the district court received notice that Mother intended to relinquish her parental rights, which apparently caused quite a significant delay in filing the journal entry terminating parental rights.

On May 3, 2012, the court filed the journal entry terminating parental rights as to Mother and any known or unknown father and placing N.A.C. in the custody of SRS for adoption proceedings pursuant to K.S.A. 2012 Supp. 38-2270. But the court specifically stayed the findings and rulings as to Mother for a period of 10 days (to May 13, 2012) pending receipt of Mother's voluntary relinquishment. On May 13, 2012, the stay was lifted and the journal

entry terminating Mother's parental rights became effective. The very next day after the stay was lifted, a conference call between Youthville and Maternal Cousins took place in order to schedule the first visit between N.A.C. and Maternal Cousins.

Youthville received its copy of the journal entry terminating parental rights and granting custody to SRS for adoption pursuant to K.S.A. 2012 Supp. 38-2270 in June 2012. The case was reassigned to an adoption worker, who in turn finalized and transmitted the ICPC paperwork necessary for Idaho to determine whether Maternal Cousins were an appropriate adoptive resource for N.A.C.

Maternal Cousins traveled to Wichita and stayed from July 13-16, 2012, to have their first visits with N.A.C. These visits could have occurred a week earlier, but Foster Parents had plans, so the visits had to be pushed back a week. On September 26, 2012, Maternal Cousins again traveled to Wichita for visits with N.A.C. that included two overnight visits. Maternal Cousins also had visits with N.A.C. in Wichita on November 3 and November 4, 2012.

On August 6, 2012, Youthville received notice that Idaho authorities had approved Maternal Cousins as an adoptive placement for N.A.C. Thereafter, Maternal Cousins requested to have N.A.C. in their home for a 2-week period. Although the ICPC for adoptive placement had just been approved, the district court denied the request. There is nothing in the record to explain why this request was denied.

On August 27, 2012, Youthville held a best interests staffing to select an adoptive resource for N.A.C. By a unanimous decision, Youthville selected Maternal Cousins as the adoptive placement. On September 7, 2012, Youthville sent Foster Parents the required 30-day notice of plans to move N.A.C. to the adoptive placement in Idaho. Foster Parents requested a review of the staffing decision. On September 27, 2012, Youthville again selected Maternal Cousins as the adoptive placement. On September 28, 2012, Foster Parents filed the motion at issue on appeal. On October 3, 2012, the court stayed N.A.C.'s adoption by Maternal Cousins in all respects pending the court's decision on Foster Parents' motion. On November 5, 2012, the court granted Foster Parents legal custody of N.A.C. with permission to pursue an independent adoption.

Based on the facts presented and the applicable law, we find little, if any, evidence to support the conclusion reached by the district court that SRS failed to seriously consider Maternal Cousins as a potential adoptive resource throughout the process in a timely, competent, and diligent manner. Specifically, we find it was the lack of written documentation establishing the court had terminated parental rights and had granted legal custody to SRS that prevented the agency from sending an ICPC request for adoptive placement; thus, the agency's delay in sending an ICPC request for adoptive placement was not the result of any lack of effort or progress on behalf of SRS or Youthville. Through no fault of SRS or Youthville, this proof was not generated by the court and made effective until mid-May 2012. And, on the day after the termination became effective, Youthville was on the phone with Maternal Cousins setting up the first visit. The ICPC request was sent off as soon as the journal entry was received by Youthville, which necessarily means that all of the other paperwork had been completed prior to the time the journal entry was received. The ICPC came back approved approximately 60 days later, and the next day Youthville requested approval from the court to send N.A.C. to Idaho for an extended visit with Maternal Cousins, which was denied for reasons unknown. Within weeks of ICPC approval the best interests staffing was held, and approximately 10 days later Youthville sent Foster Parents the required 30-day notice of plans to move N.A.C. to the adoptive placement in Idaho. Had Foster Parents not filed the motion requesting that the court make a no reasonable efforts finding, N.A.C. would have traveled to Idaho with Maternal Cousins for adoptive placement in her new home on October 7, 2012—just a month shy of her first birthday. Moreover, had the journal entry of termination been filed the same day the court orally announced its decision from the bench, the timetable here suggests that N.A.C. would have been placed with Maternal Cousins for adoption in Idaho as early as mid-August, when she was 9 months old.

B. *Custody*

In the absence of substantial competent evidence to support the district court's decision that SRS failed to make reasonable efforts or progress to find an adoptive placement for N.A.C. with a fit and willing relative, we necessarily must conclude that the district court had no statutory authority to address the issue of custody under K.S.A. 2012 Supp. 38-2270(b). See *In re J.D.*, 31 Kan. App. 2d 658, 664-65, 70 P.3d 700 (2003) (it is only *after* the court finds SRS failed to make reasonable efforts or progress towards finding acceptable permanent placement that it is authorized to rescind or enter new custody for adoption); *In re M.K.*, 31 Kan. App. 2d 24, 29, 59 P.3d 355 (2002) (same), *rev. denied* 275 Kan. 964 (2003).

CONCLUSION

Based on the discussion above, we reverse the decision of the district court finding SRS failed to make reasonable efforts or progress to find an adoptive placement for N.A.C. with a fit and willing relative, vacate the district court's order removing N.A.C. from SRS custody for adoptive placement, and vacate the district court's order granting legal custody of N.A.C. to Foster Parents. We further order the matter remanded for post-termination case management as authorized by the Code while the Department for Children and Families proceeds with and finalizes adoption placement.

\* \* \*

MALONE, C.J., dissenting: I respectfully dissent for two reasons. First, consistent with prior published decisions of this court, I would find that this court lacks jurisdiction to consider an appeal by H.G. and D.G. (Maternal Cousins) from the district court's ruling that the Department of Social and Rehabilitation Services (SRS) failed to make reasonable efforts or progress toward finding an adoptive placement for N.A.C. Second, even if this court has jurisdiction to consider the appeal, I would conclude on the merits that the district court's decision was supported by substantial competent evidence.

I will first address the issue of appellate jurisdiction. K.S.A. 2012 Supp. 38-2273(a) provides: "An appeal may be taken by any party

or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." The majority concludes that the district court's order following the hearing on November 5, 2012, constituted an order of disposition because the order resulted in a change of custody for adoptive placement of N.A.C. from SRS to S.D. and D.D. (Foster Parents). But as the majority acknowledges, prior decisions of other panels of this court have held as a matter of law that the order of disposition referred to in 38-2273(a) is the one order of disposition entered at the time of, or within 30 days after, adjudication. See *In re C.E.*, 47 Kan. App. 2d 442, 448, 275 P.3d 67 (2012); *In re J.W.*, No. 107,839, 2012 WL 5205749, at *3 (Kan. App. 2012) (unpublished opinion); *In re E.W.*, No. 101,910, 2009 WL 5063416, at *4 (Kan. App. 2009) (unpublished opinion).

The terms adjudication, disposition, and termination of parental rights are all terms of art under the Revised Kansas Code for Care of Children (Code), each carrying its own meaning and each occurring in a certain sequence. *In re D.M.M.*, 38 Kan. App. 2d 394, 398, 166 P.3d 431 (2007). In addition to the three cases cited by the majority, other published decisions of this court have described the disposition order referred to in 38-2273(a) as the custody order entered within 30 days of adjudication pursuant to K.S.A. 2012 Supp. 38-2253 and K.S.A. 2012 Supp. 38-2255 (or earlier versions of these statutes). See *In re D.M.M.*, 38 Kan. App. 2d at 398-99; *In re A.F.*, 38 Kan. App. 2d 742, 745, 172 P.3d 63 (2007); *In re S.C.*, 32 Kan. App. 2d 514, 518, 85 P.3d 224 (2004). This court has noted the "harsh or unfair result" caused by the narrow construction of 38-2273(a). *In re D.M.M.*, 38 Kan. App. 2d at 400. Nevertheless, the Kansas Legislature has not seen fit to modify the statute in the last several years. "[W]hen the legislature does not modify a statute in order to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that judicial construction. [Citation omitted.]" *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008).

Here, N.A.C. was placed in the temporary custody of SRS on November 7, 2011. No appeal was taken from that order. N.A.C. was adjudicated a child in need of care and the "Order of Dispo-

sition" was filed on January 12, 2012. No appeal was taken from either the adjudication order or the disposition order. The district court terminated parental rights following a hearing on April 3, 2012, and ordered N.A.C. to be placed in the custody of SRS for adoption proceedings. No appeal was taken from the district court's order terminating parental rights.

The hearing held by the district court on November 5, 2012, was in the nature of a post-termination "permanency hearing" pursuant to K.S.A. 2012 Supp. 38-2264. Subsection (a) of this statute defines a permanency hearing as "a proceeding conducted by the court . . . for the purpose of determining progress toward accomplishment of a permanency plan." Subsection (h) provides:

"If the court enters an order terminating parental rights to a child, . . . the requirements for permanency hearings shall continue until an adoption or appointment of a permanent custodian has been accomplished. If the court determines that reasonable efforts or progress have not been made toward finding an adoptive placement or appointment of a permanent custodian or placement with a fit and willing relative, the court may rescind its prior orders and make others regarding custody and adoption that are appropriate under the circumstances."

The majority acknowledges that the district court's finding under K.S.A. 2012 Supp. 38-2264(h) that SRS failed to make reasonable efforts to find an adoptive placement, standing alone, does not qualify as an order of disposition subject to appeal. But the majority concludes that the district court's findings regarding reasonable efforts and its orders changing custody from SRS to Foster Parents "are issues so interwoven that they are legally inseparable."

Based on the evidence presented at the November 5, 2012, permanency hearing, the district court found that United Methodist Youthville (Youthville), the agency designated by SRS to supervise N.A.C.'s adoption, had failed to make reasonable efforts or progress toward finding an adoptive placement for N.A.C. As a result of this finding, the district court removed N.A.C. from the custody of SRS for adoptive placement and granted custody directly to Foster Parents. Had the legislature intended to make a district court's order entered at a post-termination permanency hearing subject to appeal, the legislature easily could have accomplished this task by adding the term "permanency order" to the list of

appealable orders under K.S.A. 2012 Supp. 38-2273(a). The majority's interpretation of K.S.A. 2012 Supp. 38-2273(a) opens the door to endless appeals in cases under the Code. I believe the legislature intended the order terminating parental rights to be the final order under the Code that is subject to appeal.

Moreover, under the majority's interpretation of K.S.A. 2012 Supp. 38-2273(a), Maternal Cousins are allowed to appeal the district court's ruling at the permanency hearing because it resulted in a change of custody for adoptive placement of N.A.C. But had the district court ruled against Foster Parents at the same hearing, they would have had no appeal rights because the ruling would not have resulted in a change of custody and would not have constituted an order of disposition, as construed by the majority. In other words, under the majority's interpretation of the term "order of disposition," whether the district court's order at the permanency hearing is subject to appeal depends on which party loses at the hearing. I do not believe the legislature intended such an anomalous result. For all these reasons, I conclude that this court lacks jurisdiction to consider the appeal by Material Cousins.

Next, even if this court has jurisdiction to consider this appeal, I would conclude on the merits that the district court's decision was supported by substantial competent evidence. The permanency hearing commenced on November 5, 2012, at 8:55 a.m. and concluded late in the afternoon. At the start of the hearing, the district court identified the issues as (1) whether Youthville and SRS had made reasonable efforts to find an adoptive placement for N.A.C. and (2) if reasonable efforts had not been made, what is now in the best interest of the child.

At the hearing, the foster mother testified and described how N.A.C. had been placed in her home when she was 4 days old and how her family had cared for N.A.C.'s special needs since that time. She described the close bonding between N.A.C. and the family's other two children. She also testified about her concern that Youthville had organized little visitation between N.A.C. and Maternal Cousins, even though Maternal Cousins had expressed an interest in adoption from the beginning of the case. Jan Van Patten, a licensed clinical specialist social worker, testified about the trauma

that N.A.C. would suffer by being removed from Foster Parents' home. One of the Maternal Cousins also testified, along with four social workers from Youthville. Each party introduced exhibits which the district court reviewed.

At the conclusion of the hearing, each attorney presented closing arguments. N.A.C.'s guardian ad litem (GAL) was asked to make a recommendation to the district court. Based on the evidence presented at the hearing, the GAL recommended that the district court grant Foster Parents' motion. The GAL concluded her remarks by stating:

"Your Honor, again, I say this is an extremely difficult decision. I believe it will be a difficult decision for the Court. I think either of these families would be a wonderful home for this child, but I have to believe that it is in the best interests of . . . this child to remain in the only home she's ever known. Thank you."

After hearing the evidence and the arguments of counsel, the district court entered detailed findings. First, the district court stated that it was aware that in making an order, the statutes "embody a preference for relatives." See K.S.A. 2012 Supp. 38-2270(b).

The district court's biggest issue of concern was the fact that, even though it was obvious from the beginning of the case that termination of parental rights was probable, Youthville had made minimal efforts to initiate visitation between Maternal Cousins and N.A.C. This finding is supported by substantial evidence. The social workers at Youthville acknowledged that they were aware of Maternal Cousins' interest in adoption as early as November 2011. However, Youthville did not organize Maternal Cousins' first visit with N.A.C. until July 2012. Thereafter, there were two other visits, and the district court denied one request for a visit. Youthville staff explained that they did not want to schedule visitation until parental rights had been terminated. But as the district judge stated, this case "screamed termination" from the beginning and there was no reason for Youthville to delay bonding between Maternal Cousins and N.A.C. until July 2012.

Next, the district court found that in selecting Maternal Cousins as the adoptive placement, Youthville "did not consider anything

but blood." This finding is supported by an e-mail from Kelly Houser of Youthville dated May 15, 2012, that stated, "I am very confident that when this case goes to BIS [best interest staffing] the relative will be chosen." As Foster Parents argued at the hearing, Youthville already had taken this position 2 months before Maternal Cousins had their first visit with N.A.C. and without knowing how the child would respond to visitation. As noted earlier, the district court was aware of the statutory preference for relatives. But this court has held that "where an agency's decision to change placement of a child was overly influenced, if not controlled, by an abstract or arbitrary preference for 'blood,' this will sufficiently support the district court's conclusion that the agency's decision failed to reflect reasonable efforts [to find an adoptive placement]." *In re M.R.*, 36 Kan. App. 2d 837, Syl. ¶ 4, 146 P.3d 229 (2006).

Next, the district court noted Youthville's delay in initiating the Interstate Compact on Placement of Children (ICPC) request. Youthville actually initiated the ICPC process in March 2012, before termination of parental rights. The district court seemed to be aware that Youthville could not obtain an adoptive placement through the ICPC until after parental rights had been terminated. But the district court was critical of Youthville because it did not expedite the process by requesting a private home study. Ironically, Maternal Cousins ultimately took it upon themselves to request a private home study, which helped expedite their ICPC approval.

Finally, the district court found that Youthville's best interest staffing showed no consideration of what effect its decision would have on N.A.C. "to lose the first year of her life and the bonding" she had formed with Foster Parents and their children. At the hearing, Tiffany Deschner of Youthville testified as follows:

"Q. So if the Court upholds the decision—Youthville's decision today, what will be the transition for [N.A.C.] to [Maternal Cousins'] home, if any?

"A. Given her age, we would likely place her immediately.

"Q. So if the Court rules in [Maternal Cousins'] favor, [N.A.C.] will get on a plane and go to Idaho and never see [Foster Parents] again; is that the plan?

"A. That's likely the plan, yes."

Van Patten testified at length about the trauma that N.A.C. would suffer by being removed from Foster Parents' home. The

foster mother described the close bond between N.A.C. and the family's other two children. This testimony supports the district court's concern about Youthville's lack of a transition plan.

For all these reasons, the district court found that Youthville and SRS had failed to make reasonable efforts or progress toward finding an adoptive placement for N.A.C. The district court noted that at a permanency hearing held on May 17, 2012, the district court had found that SRS was making reasonable efforts toward adoption. The district court stated that to the extent these findings were inconsistent, the earlier finding had been made at a nonevidentiary hearing and "the litigated result overcomes it."

An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

Here, the GAL was correct in stating that the district court was faced with an extremely difficult decision. The district court could have denied Foster Parents' motion, and that decision would have been supported by substantial competent evidence. But likewise, the district court's decision in favor of Foster Parents was supported by evidence that "a reasonable person might regard as sufficient to support [the district court's] conclusion." 288 Kan. at 65. Based on our standard of review, I would affirm the district court's judgment in favor of Foster Parents.