ELIZABETH BOESS, as Administratrix, etc., of LOUIS BOESS, Deceased, Appellant, *v.* CLAUSEN & PRICE BREWING COMPANY, Respondent.

*Negligence — a workman killed by a latent defect in the driving shaft of an elevator — use of ordinary safety appliance — master not liable for a failure to inspect — notice of danger.*

In an action brought to recover damages because of the defendant's alleged negligence, it appeared that the plaintiff's intestate was the boss of a gang of men who were loading meal on a freight elevator in order to carry it to the top of the brewery of the defendant, and that, when the elevator had about reached its destination, it suddenly fell to the basement and the plaintiff's intestate was killed. The cause of the accident was the breaking off of the pinion of the driving shaft of the elevator engine at the point where this shaft entered the small gear wheel which operated the drum upon which were the cables which lowered and raised the elevator platform. This driving shaft was made of steel and was about two and seven-eighths inches in diameter, and the pinion was about two and five-eighths inches in diameter. There was a secret defect in the driving shaft, not visible except possibly with a microscope, and this defect was caused by

the non-amalgamation of the material composing the shaft. The shaft might have been tested as to its strength, but the operation would have taken two or three days.

The elevator was provided with a safety appliance such as was in common use at the time upon freight elevators, which, although not the latest, would have been brought into operation by an ordinary accident, but it did not work at the time of the accident in question because the shaft broke instead of one of the cables. There was a notice on the elevator, " Danger. Riding on elevator is strictly forbidden without permission."

*Held,* that the complaint was properly dismissed;

That the master was only bound to provide such appliances as were in common use and were reasonably safe;

That its failure to properly inspect the machinery, shaft and pinion was immaterial, because there was nothing to show that any inspection would have led to the discovery of the hidden defect in the shaft;

That the danger notice was unimportant, as it was admitted that the employee had a right to ride upon the elevator, nor could he have been said to have been negligent in allowing other employees to ride with him, it appearing that this had frequently been done with the knowledge and consent of the officers and superintendent of the corporation.

APPEAL by the plaintiff, Elizabeth Boess, as administratrix, etc., of Louis Boess, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of April, 1896, upon a dismissal of the complaint directed by the court after a trial before the court and a jury at a Trial Term of the Supreme Court held in and for the county of New York.

This action was brought to recover damages under the statute for the death of plaintiff's intestate alleged to have been caused by the negligence of the defendant corporation. The latter owned and operated a brewery at the corner of Fifty-ninth street and Eleventh avenue, in this city, and the plaintiff's intestate was in its employment at the time of the accident causing his death. His duties were, among other things, to operate a freight elevator in the defendant's brewery whenever it was necessary to carry bags of meal, malt or hops from the first floor to the upper stories of the building. On the afternoon of July 24, 1894, a load of meal in bags was brought to the brewery, and five men, whose duty it was to do so, and of whom the plaintiff's intestate Boess was the captain or " boss," undertook to load this meal on the freight elevator and carry it to the top floor of the brewery and there unload and store it

away.   One or two loads of meal had been carried safely to the top floor, and on the next trip, just as Boess was about to stop the elevator at the top floor, the platform of the elevator and the twenty-five bags of meal and the five men who were on it at the time fell suddenly to the basement of the building, and Boess was instantly killed.

The cause of the falling of the elevator was the breaking off of the pinion of the driving shaft of the elevator engine at the point where said shaft entered the small gear wheel which operated the drum upon which were the cables which raised and lowered the elevator platform.   This driving shaft was made of steel and was about two and seven-eighths inches in diameter.   The pinion at the end of the shaft which entered the small gear wheel which operated the drum was turned down to about two and five-eighths inches in diameter, making a shoulder on the shaft of one-eighth of an inch, against which the small gear wheel was closely driven and keyed on when hot.   To use the language of the engineer, whose duty it was to inspect the machinery : " If I like to put the wheel off I must use a sledge hammer and warm it up,   *   *   *   and any machine shop would do that, but then the shaft is in bad condition ; it is too much trouble.   This pinion broke right at the shoulder of the shaft. I could not have examined this machine at that point to see the shaft where it broke without taking the machine apart, and that would take, I can't tell exactly ; anyhow two days to three days."

This freight elevator was manufactured by the well-known firm of Otis Brothers & Co. of this city, but the exact time when it was put in is in some doubt ; for while it appears that a freight elevator was put in about twenty-seven years before, it is not clear that it was the same elevator.   It does appear, however, that the elevator had been extensively used, and that for at least four years it had been in defendant's brewery ; that it sometimes needed repair ; that the present was not the first accident ; that the engineer never had the shaft out, never saw it out, never took off the gear wheel or saw it put on, and never took off the drum before the accident, and only inspected the engine, the key, the boxes, etc., and on the day of the accident did not look at the place where the pinion broke.

One of the witnesses testified that he had personally known of two, both freight elevators, that fell by reason of the breaking of

the pinion, and that for the purpose of safety in case of the break-
ing of the wheels or pinions, elevators were made with an automatic
safety on the drum of the engine and also from the drum of the
engine to the drum overhead, and that he had put up 100 elevators
with that safety appliance; that it was intended " to operate in case
of a break in the hoisting machinery;" that he had also seen put
on 400 or 500 freight elevators the overhead drum arrangements.
It is conceded that neither of these safety appliances was used, and
that there was no counter poise or counter weight in the shaft of
the elevator, which to some extent would have retarded the force of
the fall. While this elevator did not have these additional contriv-
ances it was shown that it was equipped with such safety appli-
ances as were in common use upon freight elevators at the time;
that these consisted of two pairs of iron rods attached to the side of
the elevator platform and connected with a heavy spring over the
top of the elevator, which spring was in turn connected with the
lifting cables in such a way that in case the cables broke these
springs would be released and force these safety rods into ratchets
on the running ways of the elevator and prevent the elevator from
falling and at the same time shut the steam off from the engine.
This safety appliance was designed to operate in the event of the
breaking of the driving cables, but in the event of the breaking of
the shaft, as in this instance, the strain of the cables upon the spring
would not be relieved, and it would not operate to prevent the fall
of the elevator.

Upon an examination of the shaft after the accident and upon
the question as to whether the fracture was a sudden break or
whether it was a gradual development of a flaw in the metal, the
engineer, called by plaintiff, testified as follows : " From the appear-
ance of this shaft it has been going on some time. From an exami-
nation of that shaft I cannot tell approximately how long a time.
It was not an immediate fracture however. * * * From the
appearance of that fracture of that shaft I can tell what was the
condition of the shaft prior to the break. * * * I found a large
flaw in the center, which still appears in the shaft — right in the
center; directly in the center of the shaft there is a large flaw.
* * * The outside was perfect metal. The flaw extends to the
outer circle. The flaw existed when the shaft was put in the

machine. What we call non-amalgamation of material. Not perfectly amalgamated when first made. There does not appear from my examination of the shaft any flaw in the nature of a crack which existed in that shaft before the final break. If that shaft had been examined prior to the final break no flaw or weakness would have appeared upon its surface. By looking at it you could not detect the flaw on the inside. * * * In my opinion when that shaft finally broke it broke as a result of gradual weakening. In my opinion that gradual weakening did not appear in any way that it could have been detected by sight, not unless the machine was taken apart and submitted to a practical examination. If practically tested there would a flaw appear, submitting it to a physical test — put in a testing machine which would show if any flaw developed. In other words, testing its strength to see if there were any flaws." And upon cross-examination, when asked if, while the machine was in operation and immediately prior to the accident, the shaft had been examined, whether any flaw would have appeared, he answered : " If submitted to a practical test it would develop itself. If that shaft had been removed and this gear wheel taken off immediately prior to that accident, a flaw would have appeared there to the naked eye, if submitted to a practical test. Not otherwise, unless they had a powerful microscope and examined for a slight crack ; that might have disclosed it."

Upon the elevator was the following notice : " Danger. Riding on elevator is strictly forbidden without permission."

Upon this evidence the defendant moved to dismiss, on the ground that there was no evidence of defendant's negligence; and the plaintiff asked to go to the jury on that question, which latter motion was denied, and the former granted, dismissing the complaint, to both of which rulings exceptions were taken, and present the questions upon this appeal.

*William W. Niles*, for the appellant.

*Frank V. Johnson*, for the respondent.

O'BRIEN, J. :

The " danger " notice which was placed upon the elevator need not be considered, for the reason that it is admitted that Boess, the

decedent, ran the elevator, and that he had a perfect right to be upon it. Nor need we trouble ourselves with the question of contributory negligence, because, upon the evidence, it cannot be said, as matter of law, that the decedent was negligent in allowing the other employees engaged with him in handling the meal to go up on the elevator, it appearing that that had been done frequently with the knowledge and consent of the officers and superintendent of the defendant corporation.

This leaves for consideration the main question on this appeal, viz., the defendant's negligence. This, it is urged, consisted in the failure to provide well-known safety devices, and, secondly, the failure to properly inspect the machinery and the shaft pinion.

As to the former, the master is only bound to furnish such appliances as are in common use and are reasonably safe. Here it is shown that the elevator was equipped with safety appliances, such as were in common use upon freight elevators. This is not governed by the rules applicable to a common carrier of passengers.

The liability of the defendant to answer for Boess' death must, therefore, be placed, if at all, upon the failure to properly inspect the machinery, shaft and pinion. Upon that question the solution must be found in the answer to be furnished by the evidence as to whether the defendant failed in its duty to properly inspect, and whether such failure was the proximate cause of the accident. If the question rested solely upon inspection, then we think there was evidence in this case from which it could be inferred that the duty resting upon the defendant was not fully discharged, it appearing that for a long period, at least for four years, the shaft and pinion were not inspected because, as stated by the engineer, to obtain an inspection it would have been necessary to take off the gear wheel, and this would be attended with so much trouble — it being necessary for that purpose to separate the shaft and pinion from the drum and take out the key which held the gear wheel tight on the shaft or pinion, which would involve two or three days' work — that it was never attempted. If from the evidence, however, it appears that, even though such inspection were had it would not have disclosed the flaw in the shaft or pinion which caused the break, then the failure to inspect cannot be regarded as the proximate cause of the injury. In other words, if it appears that had the defendant

inspected in accordance with its duty, and if upon such inspection the defect would not have been apparent or discoverable, then, clearly, inspecting would not have avoided the accident.

As the evidence shows, the flaw was in the center and was pro-. duced by an improper amalgamation of the metal, and was, therefore, inherent therein at the time when the elevator was constructed, and for some time it had been gradually growing from the center towards the surface, but had not, in the way of any crack or seam, produced any indication from which by careful inspection the existence of the flaw would have been discoverable. It cannot be held that the defendant was insurer against or bound to know of such inherent and undiscoverable defect. Having employed competent persons to construct the elevator, it had a right to assume that the duty which was placed upon them of furnishing proper and safe material had been discharged. There being then but one inference that can be logically adduced from the evidence, namely, that had the defendant inspected the pinion and shaft within a reasonable time prior to the accident, it would not have discovered the flaw, it follows that the violation of the defendant's obligation to inspect was in no way related to or connected with the accident.

Our conclusion, therefore, is that the dismissal of the complaint was right, and that the judgment entered thereon must be affirmed, with costs.

Van Brunt, P. J., Williams, Patterson and Ingraham, JJ., concurred.

Judgment affirmed, with costs.