IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,208

In the Interest of N.A.C.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2012 Supp. 38-2201(b)(4), a stated statutory policy of the Revised Kansas Code for Care of Children is to "acknowledge that the time perception of a child differs from that of an adult and to dispose of all proceedings under this code without unnecessary delay." Appellate review of district court decisions made under the Revised Code should respect that policy.

2.

The right to appeal is entirely statutory. Appellate courts have only such jurisdiction as is provided by law. Under the Revised Kansas Code for Care of Children, K.S.A. 2012 Supp. 38-2273(a) sets forth the procedure and requirements for an appeal in a child in need of care case.

3.

K.S.A. 2012 Supp. 38-2273(a) specifically limits the types of orders that can be appealed in a child in need of care case under the Revised Kansas Code for Care of Children. Under that statute, appealable orders are limited to "any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." If an order in a child in need of care case does not fit within these five categories, it is not appealable.

1

4.

The terms "order of temporary custody," "adjudication," and "disposition" are terms of art within the Revised Kansas Code for Care of Children with particular meanings assigned within its context.

5.

The Revised Kansas Code for Care of Children creates a legislatively designated framework of sequential steps of judicial proceedings with each step occurring in a specific order leading toward permanency in the child's placement. Applying this framework, the temporary custody hearing and order comprise the first step in these proceedings. The second step involves the adjudication. The third involves the disposition.

6.

An order terminating parental rights is the last appealable order under K.S.A. 2012 Supp. 38-2273(a). Post-termination permanency orders issued under K.S.A. 2012 Supp. 38-2264(h) are not subject to appellate review.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 699, 316 P.3d 771 (2013). Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed July 11, 2014. Judgment of the Court of Appeals reversing the district court is reversed. Appeal dismissed for lack of jurisdiction.

*Lynnette A. Herrman*, of counsel, Beall & Mitchell, L.L.C., of Wichita, argued the cause and was on the brief for appellants Maternal Cousins.

*Kellie E. Hogan*, of Kansas Legal Services, of Wichita, argued the cause and was on the briefs for appellees, Foster Parents.

The opinion of the court was delivered by

BILES, J.:  This is an expedited appeal from a child in need of care (CINC) proceeding under the Revised Kansas Code for Care of Children (Revised Code), K.S.A. 2012 Supp. 38-2201 *et seq*. The lower courts reached different outcomes on the law and evidence. The threshold question—whether appellate jurisdiction exists to reach the merits of the case—presents a conflict within the caselaw as developed by the Court of Appeals. The answer has wide-ranging implications for future CINC proceedings. Because of that, we granted review even though we recognize our involvement delayed permanency for this child and the two families who have struggled within the system to provide her with an adoptive home.

We hold that the Revised Code's appellate jurisdiction statute, K.S.A. 2012 Supp. 38-2273(a), limits what district court decisions may be appealed in a CINC proceeding. In this case, there is no appellate jurisdiction to review the post-termination decisions at issue:  (1) the district court's finding that the responsible state agency failed to make reasonable efforts or progress toward adoptive placement; and (2) its attendant orders, which were contingent under the statute upon that first finding, removing the child from state agency custody and placing her directly with her foster parents with permission to adopt. See K.S.A. 2012 Supp. 38-2264(h) (if court determines reasonable efforts or progress has not been made toward finding adoptive placement, it may make other orders regarding custody and adoption that are appropriate under the circumstances).

We reverse the decision by the Court of Appeals panel majority, which reached a contrary holding. This appeal is dismissed for lack of appellate jurisdiction.

3

On November 2, 2011, N.A.C. was born premature on a city street in Wichita. She weighed 4 pounds and tested positive for cocaine. The baby's mother was behaving erratically, and the two were taken to a hospital where the mother wanted to leave with the newborn against medical advice. The infant was taken into police protective custody as authorized by K.S.A. 2012 Supp. 38-2231(b)(1) (child under 18 years of age shall be taken into custody when law enforcement or court services officer reasonably believes child will be harmed if not immediately removed from place where child has been found). Mother left the hospital alone and has had no further contact with N.A.C.

For the most part, we will limit our discussion about what happened next to what is relevant to the dispositive jurisdictional issue.

*District Court Proceedings*

On November 4, a CINC petition was filed in Sedgwick County District Court Juvenile Department, Case No. 2011-JC-430. That same day, the district court (CINC court) entered an ex parte order of protective custody under K.S.A. 2012 Supp. 38-2242, which placed N.A.C. with the Secretary of the Department of Social and Rehabilitation Services (SRS). That agency then asked S.D. and D.D. (Foster Parents) to accept N.A.C. as their foster child. They agreed and brought the infant home from the hospital. They have cared for her ever since. Foster Parents are not N.A.C.'s blood relatives.

After a hearing on November 7, the CINC court entered an order of temporary custody under K.S.A. 2012 Supp. 38-2243 in which it determined:  (1) an emergency existed threatening N.A.C.'s safety; (2) there was probable cause to believe N.A.C. was likely to sustain harm if not immediately removed from the parental home; and (3)

N.A.C.'s placement with SRS should continue. Later that month, a court services officer informed an employee of Youthville, an SRS contractor, that the mother's cousin and cousin's husband (Maternal Cousins), who lived in another state, were interested in adopting N.A.C.

When N.A.C. was 1 month old, she was adjudicated a child in need of care under K.S.A. 2012 Supp. 38-2251. On January 5, 2012, the CINC court conducted a dispositional hearing under K.S.A. 2012 Supp. 38-2253. The resulting Order of Disposition directed that N.A.C. remain in SRS custody.

On February 8, 2012, the State filed a motion to terminate parental rights. N.A.C. was 3 months old at that point. The district court orally granted this motion during an April hearing, but the journal entry was not filed until May 3 because N.A.C.'s mother informed the court she wanted to voluntarily relinquish her parental rights. On May 17, the district court held a post-termination permanency hearing under K.S.A. 2012 Supp. 38-2264. The district court accepted SRS's permanency plan and continued N.A.C.'s temporary placement with SRS for adoption.

In the meantime, SRS had initiated efforts for Maternal Cousins to adopt N.A.C. in compliance with the Interstate Compact on Placement of Children (ICPC), K.S.A. 38-1201 *et seq.*, which was necessary because Maternal Cousins resided in another state. An adoptive ICPC was approved on August 6. SRS and its contractor formally chose Maternal Cousins for adoptive placement at an agency meeting commonly referred to as the "best interests staffing."

But Foster Parents also wanted to adopt N.A.C. They were granted interested party status by the CINC court under K.S.A. 2012 Supp. 38-2241(e) (permitting such status to any person with whom the child has resided, among others, if the district court finds it is

5

in the best interests of the child). Foster Parents first pursued an internal reconsideration of the agency decision favoring adoptive placement with Maternal Cousins; but when SRS again chose Maternal Cousins, Foster Parents filed a motion with the CINC court under K.S.A. 2012 Supp. 38-2264(h) alleging in that statute's language that "reasonable efforts or progress have not been made toward finding an adoptive placement." This motion and its outcome are the focus of this appeal.

On November 5, the CINC court held an evidentiary hearing and granted Foster Parents' motion. It found SRS and Youthville had failed to make reasonable efforts or progress towards N.A.C.'s adoption. The court also noted that from the outset "this case screamed termination [of parental rights]," making permanent placement the obvious outcome. The CINC court further found the delays in securing N.A.C.'s adoption by Maternal Cousins were the result of systemic problems with the agency and its contractor and that the "absolute severance" of the bonds that had formed between N.A.C. and Foster Parents, as well as their other children with whom N.A.C. had been living, would not be in N.A.C.'s best interests. The CINC court then granted Foster Parents custody of N.A.C. with permission to adopt. It also granted Maternal Cousins interested party status under K.S.A. 2012 Supp. 38-2241(e) for purposes of appeal "if they choose to explore that option." N.A.C. had just turned 1.

After the CINC court ruling, Foster Parents initiated a separate court action to adopt N.A.C. in Sedgwick County District Court (Case No. 12 AD 366) under the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq*., which is part of the Kansas Probate Code. This separate court action was necessary because a district court lacks authority to enter adoption decrees under the Revised Code. See K.S.A. 2012 Supp. 38-2270 (enumerating orders CINC court may enter if parental rights have been terminated and it appears adoption is a viable alternative).

6

On December 19, Maternal Cousins filed a notice of appeal in the CINC proceeding (Case No. 2011-JC-430). That notice states Maternal Cousins appeal "certain judgments entered herein on November 5, 2012, and all previous rulings, and orders on all issues." The notice of appeal concludes the appellate record from the CINC case.

On December 21, the same district judge who conducted the CINC proceedings presided over the adoption case and approved Foster Parents' adoption of N.A.C. Maternal Cousins did not appear in that case or pursue an appeal.

*Court of Appeals Proceedings*

Once the appeal from the CINC proceeding was docketed by Maternal Cousins, Foster Parents filed a motion to involuntarily dismiss it, alleging the Court of Appeals lacked jurisdiction. Foster Parents argued the November 5 order was not one of those enumerated in the Revised Code as appealable. See K.S.A. 2012 Supp. 38-2273(a) (appeal may be taken by any party or interested party from "any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights"). The Court of Appeals denied this motion but ordered the parties to fully brief the pivotal jurisdictional question for fuller consideration with the merits.

In their responsive filings, Maternal Cousins argued jurisdiction existed under the Code of Civil Procedure's general jurisdiction statute, K.S.A. 2012 Supp. 60-2102. They essentially contended the November 5 CINC court order was a final order and that CINC proceedings are civil in nature. Notably, Maternal Cousins did not address the more specific jurisdictional provision in K.S.A. 2012 Supp. 38-2273(a), which Foster Parents had identified as controlling.

7

For reasons not at all understandable, neither party advised the Court of Appeals in their briefs that the separate adoption proceeding had occurred months earlier and resulted in a final adoption decree. In fact, the adoption decree was not disclosed to the panel until oral arguments, at which point the panel ordered the parties to prepare additional briefing addressing whether this appeal was moot since a final adoption decree had been entered and not appealed.

After this additional briefing, a divided Court of Appeals panel reversed the CINC court. The majority held jurisdiction existed, that the case was not moot, and that the CINC court erred in finding SRS and Youthville had failed to make reasonable efforts or progress towards N.A.C.'s adoption. The panel majority then vacated the CINC court's order granting Foster Parents legal custody, voided the adoption decree in the separate adoption proceeding (Case No. 12 AD 366), and remanded the CINC case for post-termination case management "while [SRS] proceeds with and finalizes adoption placement." *In re N.A.C.*, 49 Kan. App. 2d 699, 725, 316 P.3d 771 (2013). In other words, the panel majority attempted to clear a path for Maternal Cousins to adopt N.A.C. instead of Foster Parents. N.A.C. had just turned 2 years old.

Chief Judge Malone dissented. He argued the panel should have followed prior Court of Appeals caselaw holding that there was no jurisdiction to entertain an appeal from a post-termination permanency order such as the one in this case. 49 Kan. App. 2d at 725. And even if jurisdiction existed, Chief Judge Malone continued, he would hold the CINC court's finding that SRS and its contractor had failed to make reasonable efforts or progress toward an adoptive placement was supported by substantial competent evidence. 49 Kan. App. 2d at 728. He did not address mootness.

Foster Parents petitioned this court for review, which we granted under K.S.A. 20-3018(b). See also K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review).

We expedited our review because the child's custody remained in suspense. See K.S.A. 2012 Supp. 38-2201(b)(4) (statutory policy that Revised Code be liberally construed to "acknowledge that the time perception of a child differs from that of an adult and to dispose of all proceedings under this code without unnecessary delay"); see also *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) ("[C]ourts must strive to decide these cases in 'child time' rather than 'adult time.'"), *rev. denied* 289 Kan. 1278 (2010). Appellate review of district court decisions made under the Revised Code should respect the statutory policy stated in K.S.A. 2012 Supp. 38-2201(b)(4). See also K.S.A. 2012 Supp. 38-2273(d) ("[A]ppeals under this section shall have priority over all other cases.").

## JURISDICTION

Appellate courts have only such jurisdiction as is provided by law. *Williams v. Lawton*, 288 Kan. 768, 778, 207 P.3d 1027 (2009). The existence of jurisdiction is a question of law subject to unlimited appellate review. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1121, 307 P.3d 1255 (2013). Questions involving statutory interpretation are also questions of law subject to unlimited review. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014).

### A. WHICH JURISDICTION STATUTE APPLIES?

Maternal Cousins contend K.S.A. 2012 Supp. 60-2102(a)(4) governs their appeal. It states in relevant part:

9

"[T]he appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from: . . . (4) A final decision in any action, except in an action where a direct appeal to the supreme court is required by law. In any appeal or cross appeal from a final decision, any act or ruling from the beginning of the proceedings shall be reviewable." K.S.A. 2012 Supp. 60-2102(a).

Maternal Cousins couple their reliance on K.S.A. 2012 Supp. 60-2102(a)(4) with K.S.A. 2012 Supp. 38-2201(a), which states: "Proceedings pursuant to [the Revised Code] shall be civil in nature and all proceedings, orders, judgments and decrees shall be deemed to be pursuant to the parental power of the state." They then assume—without argument—that the orders from which they appeal are final decisions.

But as Foster Parents point out, the Revised Code contains its own jurisdictional statute, K.S.A. 2012 Supp. 38-2273(a), so Maternal Cousins' assertion of appellate jurisdiction under K.S.A. 2012 Supp. 60-2102 defies a cardinal rule of statutory interpretation that the more specific statute governs when two statutes may be applicable. *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1215, 221 P.3d 580 (2009); see also *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007) ("A specific statute controls over a general statute. [Citation omitted.] Likewise, a specific provision within a statute controls over a more general provision within the statute."), *cert. denied* 555 U.S. 937 (2008); *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, Syl. ¶ 9, 955 P.2d 1136 (1998) ("General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling.").

10

In addition, Maternal Cousins' claim that K.S.A. 2012 Supp. 60-2102(a)(4) controls appellate jurisdiction in CINC cases finds no support in legislative history. This can be readily seen by tracking the legislature's actions in 1982 when it enacted the Kansas Code for Care of Children, which is the Revised Code's predecessor. When introduced, the proposed legislation contained an appellate jurisdiction provision nearly identical to the one under the then-in-force Kansas Juvenile Code. It allowed an appeal "*by any interested party from any final order in any proceeding to this code*." (Emphasis added.) See K.S.A. 1980 Supp. 38-834(b); see also Kansas Judicial Council Bulletin, June 1981, p. 51.

But this language changed during the legislative process to itemize certain orders as appealable. See L. 1982, ch. 182, sec. 56 (codified at K.S.A. 1982 Supp. 38-1591). And that itemization is nearly identical to the current appellate jurisdiction statute in all but one respect—it permitted appeals from only four types of orders: adjudications, dispositions, terminations of parental rights, or orders of temporary custody. K.S.A. 38-1591(a). In 2006, when the Revised Code was enacted, a fifth category was added—findings of unfitness. L. 2006, ch. 200, sec. 68; K.S.A. 2012 Supp. 38-2273.

The current appellate jurisdiction statute, which lacks the pre-1982 "final order" language, demonstrates the legislature intended to limit appellate jurisdiction to particular categories of orders and to permit interlocutory review of them instead of requiring litigants to wait for final orders. This is consistent with the Revised Code's expressed policy of disposing of proceedings without unnecessary delay. See K.S.A. 2012 Supp. 38-2201(b)(4); K.S.A. 2012 Supp. 38-2273(d). In other words, by limiting the type of appealable orders in CINC proceedings, the stated policy goal of reducing delay is furthered and appellate review is not deferred until a final order is entered, facilitating more immediate review.

11

We hold Maternal Cousins' claim that K.S.A. 2012 Supp. 60-2102 confers appellate jurisdiction and allows an appeal from any final order in a CINC proceeding under the Revised Code lacks merit. See *In re E.G.*, No. 98,187, 2007 WL 3085378, at *2 (Kan. App. 2007) (unpublished opinion) (K.S.A. 2006 Supp. 38-2273 governs appeals from decisions under Code for Care of Children, not K.S.A. 60-2102). The panel was correct to reject Maternal Cousins' reliance on K.S.A. 2012 Supp. 60-2102 and to focus on whether the November 5 order was appealable under K.S.A. 2012 Supp. 38-2273(a).

We consider next whether the panel erred when it held appellate jurisdiction existed under the controlling statute.

## B. IS THE NOVEMBER 5 ORDER APPEALABLE?

As mentioned, K.S.A. 2012 Supp. 38-2273(a) specifies five categories of appealable orders under the Revised Code. It states: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." If there is to be appellate jurisdiction in this case, the CINC court's November 5 order must fit within one of these categories.

It is important to recall that the CINC court's November 5 order and Foster Parents' motion that precipitated it were authorized by K.S.A. 2012 Supp. 38-2264(h), which states:

> "If the court enters an order terminating parental rights to a child, or an agency has accepted a relinquishment . . . the requirements for permanency hearings shall continue until an adoption or appointment of a permanent custodian has been accomplished. *If the court determines that reasonable efforts or progress have not been made toward finding*

12

*an adoptive placement or appointment of a permanent custodian or placement with a fit and willing relative, the court may rescind its prior orders and make others regarding custody and adoption that are appropriate under the circumstances.* Reports of a proposed adoptive placement need not contain the identity of the proposed adoptive parents." (Emphasis added.)

It is also important to remember that the components of the CINC court's November 5 order consist of: (1) a factual determination that SRS and its contractor had failed to make reasonable efforts or progress toward finding an adoptive placement for N.A.C.; (2) a rescission of the CINC court's prior order giving SRS custody of N.A.C.; and (3) an order placing N.A.C. directly with Foster Parents with permission for them to adopt. As is readily seen from K.S.A. 2012 Supp. 38-2264(h), the orders were derivative of the factual determination—they could not have been entered absent the CINC court's prerequisite lack of "reasonable efforts or progress" determination. It is also noteworthy that K.S.A. 2012 Supp. 38-2270(a)(2) expressly gave the CINC court authority after parental rights were terminated to grant custody of the child to proposed adoptive parents with consent to the adoption of the child by the proposed adoptive parents. Such orders are not among those listed in K.S.A. 2012 Supp. 38-2273(a).

The panel majority conceded that the CINC court's factual determination regarding the lack of reasonable efforts or progress toward adoption, standing alone, was not appealable under the statute. *In re N.A.C.*, 49 Kan. App. 2d at 714. But it nonetheless characterized that determination combined with the attendant orders as an order of disposition, which it defined as an order "that places a child in, continues a child in, or removes a child from the legal custody of an individual or agency." 49 Kan. App. 2d at 710, 715. It further acknowledged its definition and reasoning were unique and directly conflicted with most all prior Court of Appeals decisions that had defined "order of disposition" more narrowly under K.S.A. 2012 Supp. 38-2273(a). 49 Kan. App. 2d at 712-13.

13

In his dissent, Chief Judge Malone described the November 5 order as a post-termination permanency order. As such, he argued, it is not included within the appealable orders listed in the statute. 49 Kan. App. 2d at 727-28 ("Had the legislature intended to make a district court's order entered at a post-termination permanency hearing subject to appeal, the legislature easily could have accomplished this task by adding the term 'permanency order' to the list of appealable orders under K.S.A. 2012 Supp. 38-2273[a].").

Resolution of these two views is an issue of first impression for this court. We begin by reviewing the governing statutes in the Revised Code. After that, we discuss prior Court of Appeals decisions taking an entirely different view from the panel majority. As we go, we will apply the facts of the case to the statutory provisions. In the end, we conclude the panel majority erred.

*The Governing Statutes and Statutory Scheme*

None of the appealable orders listed in K.S.A. 2012 Supp. 38-2273(a) are defined in the Revised Code's definitional statute, K.S.A. 2012 Supp. 38-2202. But each is given context by its own statutory provisions that establish deadlines, notice requirements, and required underlying findings or legal conclusions. So, while the appealable orders are not explicitly defined, the governing statutes for each give description and meaning to the terms.

Consider first the genesis of the proceeding at hand. Law enforcement took N.A.C. into protective custody based only on a law enforcement officer's reasonable belief that she would be harmed if not immediately removed from the place where she was found. See K.S.A. 2012 Supp. 38-2231(b)(1). The Revised Code does not authorize an appeal

14

from the officer's action because it recognizes this on-the-spot intervention occurs because of an exigency observed by the officer without court order or supervision. But the Revised Code requires a prompt independent review of law enforcement's action once a child is taken into protective custody because the officer must notify the district attorney of all information in the officer's possession justifying that action "without unnecessary delay." K.S.A. 2012 Supp. 38-2232(a).

This notification triggers the district attorney's duty to review the facts, recommendations, and evidence to determine if a CINC petition is warranted. K.S.A. 2012 Supp. 38-2233. If the district attorney files a petition, an expedited hearing must be granted. And, upon application, the court may issue an ex parte order of protective custody but "only after the court has determined there is probable cause to believe the allegations in the application are true." K.S.A. 2012 Supp. 38-2242(b)(1). Protective custody, however, cannot continue for more than 72 hours with certain exceptions. K.S.A. 2012 Supp. 38-2242(b)(2). This ex parte protective custody order, like law enforcement's decision to take the child into protective custody, is designed to be short-lived.

A. *Temporary Custody Orders*

A temporary custody hearing "shall be held within 72 hours, excluding Saturdays, Sundays, legal holidays, and days on which the office of the clerk of the court is not accessible, following a child having been taken into protective custody." K.S.A. 2012 Supp. 38-2243(b). This timing coincides with the statutory expiration of the ex parte protective custody order and is the first hearing in which the parents or other statutorily recognized parties must receive notice and have an opportunity to appear. See K.S.A. 2012 Supp. 38-2243(c). And for this proceeding, oral notice is sufficient if there is not enough time to give written notice. K.S.A. 2012 Supp. 38-2243(e). In this way, the

15

legislature recognizes that this hearing occurs so quickly in the process that the typical notice and service procedure may not be practical.

At this hearing, under the statute applicable to these proceedings, an order of temporary custody could be entered if the district court determines "there is probable cause to believe that the: (1) Child is dangerous to self or to others; (2) child is not likely to be available within the jurisdiction of the court for future proceedings; or (3) health or welfare of the child may be endangered without further care." K.S.A. 2012 Supp. 38-2243(f). Any one of these determinations trigger the court's authority to "place the child in the temporary custody" of certain persons including the parent, a shelter facility, or the Secretary. K.S.A. 2012 Supp. 38-2243(g)(1).

But the temporary custody order is also designed to be short-lived. It "shall remain in effect until modified or rescinded by the court or an adjudication order is entered but *not exceeding 60 days*, unless good cause is shown and stated on the record." (Emphasis added.) K.S.A. 2012 Supp. 38-2243(g)(2). Temporary custody orders are the first appealable orders under K.S.A. 2012 Supp. 38-2273(a).

In N.A.C.'s case, the temporary custody order was entered on November 7, 2011, just days after N.A.C. was taken into protective custody. No other temporary custody orders were entered under K.S.A. 2012 Supp. 38-2243, and no appeal was taken from the November 7, 2011, order.

B. *Order of Adjudication*

Orders of adjudication are governed by K.S.A. 2012 Supp. 38-2251(b), which provides:

16

"(b) If the court finds that the child is a child in need of care, the court *shall enter an order adjudicating the child to be a child in need of care* and may proceed to enter other orders as authorized by this code." (Emphasis added.)

This denotes that the order of adjudication under the Revised Code is the order finding the child to be a child in need of care. And once an order of adjudication is entered, the court may then enter other orders authorized by the Revised Code. Otherwise, the court must dismiss the proceeding. K.S.A. 2012 Supp. 38-2251(a) and (b). The Revised Code requires that the order of adjudication "be entered within 60 days from the date of the filing of the petition, unless good cause for a continuance is shown" or the case must be dismissed. K.S.A. 2012 Supp. 38-2251(c). This 60-day time period coincides with the 60-day time limit on temporary custody orders. See K.S.A. 2012 Supp. 38-2243(g)(2).

In N.A.C.'s case, the CINC court held a hearing on December 1, 2011, at which it adjudicated her a child in need of care. No appeal was taken from that order.

C. *Order of Disposition*

There is more complexity to the statutory scheme governing dispositional orders than the other orders discussed so far. The timing for dispositional orders is dictated by K.S.A. 2012 Supp. 38-2253(b), which states "[a]n order of disposition may be entered at the time of the adjudication if notice has been provided . . . but *shall be entered within 30 days following adjudication*, unless delayed for good cause shown." (Emphasis added.) The substance of the dispositional hearing and attendant order are addressed by K.S.A. 2012 Supp. 38-2253, which states:

17

"(a) At a dispositional hearing, the court shall receive testimony and other relevant information with regard to the safety and well being of the child and may enter orders regarding:

(1) Case planning which sets forth the responsibilities and timelines necessary to achieve permanency for the child; and

(2) custody of the child."

Under K.S.A. 2012 Supp. 38-2255(b) and (c), there are two roads that may be taken regarding custody—either the court places the child in the parent's custody or it removes the child from parental custody. If the latter, the court must make certain findings. For example, it must find probable cause that certain conditions exist, such as "allowing the child to remain in [the] home is contrary to the welfare of the child." K.S.A. 2012 Supp. 38-2255(c)(1)(B). And if the court makes the required findings and removes the child from the parent's custody, it may award custody to: (1) a child's relative; (2) a person with whom the child has close emotional ties; (3) any other suitable person; (4) a shelter facility; (5) a youth residential facility; or (6) the Secretary. This custody order "shall continue until further order of the court." K.S.A. 2012 Supp. 38-2255(d). In addition, if the person to whom custody is awarded is not a parent, a permanency plan that conforms to the requirements of K.S.A. 2012 Supp. 38-2264 (permanency hearing: purpose, procedure, time for hearing, and authorized orders) must be prepared. K.S.A. 2012 Supp. 38-2255(e).

Once a dispositional order is entered, the court may rehear the matter on its own motion or the motion of a party or interested party. And if there is a rehearing, the court may enter any dispositional order authorized by the Revised Code, except modification of a registered child support order. K.S.A. 2012 Supp. 38-2256.

In N.A.C.'s case, an order of disposition was filed on January 12, 2012, after the CINC court held N.A.C. was likely to sustain harm if not immediately removed from the home, returning home would be contrary to her welfare, and immediate placement was in her best interests. That order also adopted the SRS-proposed permanency plan, which is not in the appellate record although a social worker testified that reintegration was pursued until parental rights were terminated. No appeal was taken from the January 12 order of disposition.

D. *Finding of Unfitness and Termination of Parental Rights*

Requests to terminate parental rights or to find that either or both parents are unfit can be made in the original petition or on a party's motion. K.S.A. 2012 Supp. 38-2266. Upon receiving the petition or motion, the court "shall set the time and place for the hearing, which shall be held within 90 days." K.S.A. 2012 Supp. 38-2267(a). The discretion to seek an order terminating parental rights dissipates, however, if the district court has entered a dispositional order removing the child from the parent's custody under K.S.A. 2012 Supp. 38-2255(d) and it has determined reintegration is not a viable alternative under K.S.A. 2012 Supp. 38-2255(e). Under those circumstances, "proceedings to terminate parental rights and permit placement of the child for adoption or appointment of a permanent custodian shall be initiated unless the court finds that compelling reasons have been documented in the case plan." K.S.A. 2012 Supp. 38-2255(f).

Once the child has been adjudicated a child in need of care, "the court may terminate parental rights . . . when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2012 Supp. 38-2269(a). And if termination occurs, the court

may: (1) authorize adoption; (2) authorize appointment of a permanent custodian; or (3) order continued permanency planning. K.S.A. 2012 Supp. 38-2269(g)(2).

An order of unfitness or termination of parental rights also triggers a responsibility on the person or agency awarded custody of the child to submit a written permanency plan within 30 days, which includes a plan for permanent placement, measurable objectives, and time schedules. K.S.A. 2012 Supp. 38-2269(j). If the court does not terminate parental rights, the court may: (1) authorize appointment of a permanent custodian; or (2) order continued permanency planning. K.S.A. 2012 Supp. 38-2269(g)(3).

In N.A.C.'s case, the district court terminated parental rights after a hearing on April 3, 2012. No appeal was taken from that order.

*Prior Caselaw Interpreting These Statutes*

The vast majority of appeals under the Revised Code and its predecessor have been decided by our Court of Appeals with little review from this court. Over time, numerous Court of Appeals panels have developed caselaw consistently viewing both the Revised Code and its predecessor as creating a statutory framework of sequential steps or phases. And in that context, the caselaw has considered the appealable orders enumerated in K.S.A. 2012 Supp. 38-2273(a) as terms of art with particularized meanings.

In other words, each appealable order occurs in a sequence leading to permanent placement for the child in need of care and the terms are to be considered in context with that statutorily created setting. Recently, the Court of Appeals summarized this as follows:

20

"[T]he terms 'order of temporary custody,' 'adjudication,' and 'disposition' are terms of art each carrying its own meaning. [Citation omitted.] The 'order of temporary custody' is the first step in a sequence, wherein the court identifies the person or agency that will have temporary custody of a child determined to be in need of protection. [Citation omitted.] Such order covers the period of time until an 'adjudication' which is the next step in the sequence where the court determines if the child is a CINC. If the child is found not to be a CINC, the proceedings are dismissed. [Citation omitted.] If, however, the child is found to be a CINC the court enters an 'adjudication order' and proceeds to a 'disposition.' [Citation omitted.] The temporary custody order may remain in effect until disposition, or the court may modify the order of custody at adjudication." *In re A.E.S.*, 48 Kan. App. 2d 761, 765, 298 P.3d 386 (2013).

We agree with this approach. The terms "order of temporary custody," "adjudication," and "disposition" must be seen as terms of art, each with a particular meaning within the Revised Code that clearly establishes a sequence of court-supervised events all marching toward permanency. This is evidenced by the time limitations within the Revised Code for each phase's duration, which ensure progress toward permanency is achieved; the differences at each phase in factual findings and legal conclusions; and in the options available to the district court in each phase.

Applying this framework, the first phase in a CINC proceeding is the temporary custody hearing and order governed by K.S.A. 2012 Supp. 38-2243. The second phase involves the adjudication. And the third encompasses the disposition.

Given the time constraints and substantive findings required to enter orders of temporary custody and adjudication, we can eliminate both as appropriate descriptors for the post-termination November 5 order at issue in this appeal. The order's prerequisite finding, that the state agency did not make reasonable efforts or progress toward finding

21

an adoptive placement, is not a temporary custody order or order of adjudication when viewed under the statutory framework. All parties concede this.

Equally as clear, the portion of the order regarding Foster Parents' custody and consent to their adoption of N.A.C., which was statutorily dependent on the lack of progress finding, is not a temporary custody order or an order of adjudication. Orders of temporary custody are described and controlled by K.S.A. 2012 Supp. 38-2243. These orders may be entered only after factual findings that were not made during the November 5 hearing. See K.S.A. 2012 38-2243(f) (temporary custody order may be entered after determining probable cause exists to believe child is danger to self or others; not likely to be within court jurisdiction for future proceedings; or child's health or welfare may be endangered). And as noted above, under the Revised Code orders of temporary custody survive only up to the adjudication, which occurred in this case 11 months before the November 5 order.

Finally, and most certainly, the November 5 order is not a finding of unfitness or an order terminating parental rights. Again, no one disputes that.

Therefore, through this process of elimination, we are left with only orders of disposition as the last possible category of appealable orders into which the November 5 order can fall for appellate jurisdiction to exist in this case. The Court of Appeals panel was divided on that point. We address the panel's analysis next.

*The Court of Appeals Analysis Regarding Orders of Disposition*

The panel majority began its jurisdictional analysis by focusing on the decisions to change custody from SRS to Foster Parents and to allow Foster Parents to pursue an independent adoption. It held these components were enough to characterize the

November 5 order as an appealable order of disposition. *In re N.A.C.*, 49 Kan. App. 2d at 710. In so holding, the panel majority acknowledged the CINC court's factual finding under K.S.A. 2012 Supp. 38-2264(h) that the state agency failed to make reasonable efforts or progress to find an adoptive placement was not an order of disposition subject to appeal by itself. But it reasoned this nonappealable portion was "so interwoven" with the custody change to Foster Parents that they were "legally inseparable" for jurisdictional purposes. 49 Kan. App. 2d at 714-15.

In his dissent, Chief Judge Malone presented four arguments belying the majority's rationale. First, he adhered to the prior Court of Appeals decisions consistently holding that an order of disposition under K.S.A. 2012 Supp. 38-2273(a) is a term of art specifically meaning the order of disposition entered at the time of or within 30 days after adjudication. 49 Kan. App. 2d at 726. Second, he noted the legislature had not modified the statute over the past several years since those decisions were announced, implying the legislature's presumed agreement with their holdings. 49 Kan. App. 2d at 726; see also *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) ("[W]hen the legislature does not modify a statute in order to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that judicial construction."). Third, he objected to what he saw as an anomaly within the majority's reasoning: that Maternal Cousins could appeal the CINC court's finding that the state agency failed to make reasonable efforts or progress because the CINC court ultimately changed N.A.C.'s custody, but if Foster Parents had not prevailed Foster Parents would have had no appeal right because no change of custody would have occurred. Finally, Chief Judge Malone offered this observation:

> "The majority's interpretation of K.S.A. 2012 Supp. 38-2273(a) opens the door to endless appeals in cases under the [Revised] Code. I believe the legislature intended the order

23

terminating parental rights to be the final order under the [Revised] Code that is subject to appeal." 49 Kan. App. 2d at 728.

Although our rationale differs in some respects, we agree with Chief Judge Malone that the reasonable efforts or progress finding and the collateral custody order and consent to adoption that followed once that finding was made are best characterized as permanency orders arising from a post-termination permanency hearing. We also agree the order terminating parental rights was the last appealable order under K.S.A. 2012 Supp. 38-2273(a).

The Court of Appeals has consistently construed "disposition" by interpreting the Revised Code *in pari materia* within the context of the statutory sequencing previously discussed above. See *In re A.E.S.*, 48 Kan. App. 2d at 765 (recognizing sequence begins with order of temporary custody); *In re C.E.*, 47 Kan. App. 2d 442, 448, 275 P.3d 67 (2012); *In re D.M.M.*, 38 Kan. App. 2d 394, 398, 166 P.3d 431 (2007); *In re S.C.*, 32 Kan. App. 2d 514, 518, 85 P.3d 224 (2004); *In re J.W.*, No. 107,839, 2012 WL 5205749, at *2-3 (Kan. App. 2012) (unpublished opinion); *In re C.B.*, No. 105,223, 2011 WL 4563104, at *2 (Kan. App. 2011) (unpublished opinion); *In re H.M.P.*, No. 104,463, 2011 WL 2206638, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 292 Kan. 965 (2011); *In re L.M.*, No. 102,208, 2009 WL 5206247, at *3 (Kan. App. 2009) (unpublished opinion). And that court's remaining cases are aligned with this sequencing concept, even though they do not explicitly say so. See *In re A.F.*, 38 Kan. App. 2d 742, 744, 172 P.3d 63 (2007) (describing these as terms of art but not referencing the particular sequence); *In re E.W.*, No. 101,910, 2009 WL 5063416, at *4 (Kan. App. 2009) (unpublished opinion) (defining disposition but not explicitly stating sequence); *In re E.G.*, No. 98,187, 2007 WL 3085378, at *3 (Kan. App. 2007) (unpublished opinion) (defining disposition without referencing other provisions).

Under this sequencing, dispositional orders have been interpreted to be those concerning child custody entered after the child is adjudicated a child in need of care. *In re D.M.M.*, 38 Kan. App. 2d at 398-99. But this dispositional phase ends once an order terminating parental rights is entered, precluding appellate review of any later orders because post-termination orders are not considered "dispositional orders." See *In re S.C.*, 32 Kan. App. 2d at 518 (no jurisdiction to review denial of great aunt's post-termination motion for interested party status); *In re D.M.M.*, 38 Kan. App. 2d at 398-400 (no jurisdiction to review post-termination reasonable efforts determination); *In re A.F.*, 38 Kan. App. 2d at 744-46 (no jurisdiction to appeal district court's review of SRS's post-termination change of placement); *In re E.W.*, 2009 WL 5063416, at *5 (no jurisdiction to appeal post-termination permanency hearing decision reversing SRS best interest staffing and giving consent to family's adoption).

This approach remains consistent with the statutes governing dispositions and termination of parental rights. It is also consistent with the legislature's decision to limit the appealable issues under K.S.A. 2012 Supp. 38-2273(a). Otherwise, as Chief Judge Malone observed, the panel majority's decision could leave children exposed to an endless circle of appellate custody battles.

The panel majority rightly pointed out that the dispositional rehearing statute, K.S.A. 2012 Supp. 38-2256, does not expressly limit rehearing to motions entered before the termination of parental rights, unlike the statute governing temporary custody orders. 49 Kan. App. 2d at 711; see K.S.A. 2012 Supp. 38-2243(g)(2) (providing temporary custody orders "remain in effect until modified or rescinded by the court or an adjudication order is entered but not exceeding 60 days, unless good cause is shown."). And for the panel majority, the fact that the Revised Code permits rehearing of a dispositional order demonstrated what it saw as a flaw with its colleagues' prior caselaw, which held "as a matter of law that the only order of disposition subject to appeal . . . is

25

that *one* order of disposition entered at the time of, or within 30 days after, adjudication." *In re N.A.C.*, 49 Kan. App. 2d at 710.

But this reasoning oversimplifies and wrongly dispenses with the prior caselaw, which does not necessarily deny an appeal of a dispositional order issued after a rehearing. After all, the time period between a first order of disposition and a termination of parental rights may be significant, and more than one order of disposition might be required, especially if the goal is to first attempt parental reintegration. Nothing in the jurisdictional statute prevents an appeal from any dispositional orders entered after rehearing. See K.S.A. 2012 Supp. 38-2273(a). But the cutoff under the Revised Code's structure, as Chief Judge Malone pointed out, is the order terminating parental rights. 49 Kan. App. 2d at 728.

This conclusion is further supported by the termination of parental rights statute, which limits the actions the court can take once parental rights have been terminated, *i.e.*, the court can authorize an adoption, appoint a permanent custodian, or order continued permanency planning. K.S.A. 2012 Supp. 38-2269(g)(2). Notably absent is the authority to enter a dispositional order under K.S.A. 2012 Supp. 38-2255. This, of course, makes sense because when parental rights have been terminated, it is necessarily true that the district court is no longer doing what the disposition phase requires:  weighing whether the parent should have custody and, if not, whether reintegration is possible. That ship has sailed.

This conclusion is also consistent with the legislature's obvious intent to limit the types of appealable issues so there is timely closure in these cases. Otherwise, it is easy to see how these cases could turn into back-and-forth campaigns of endless litigation and appeals by persons other than the child's parents. The panel majority's expansive definition of a "disposition" as any order that "places a child in, continues a child in, or

removes a child from the legal custody of an individual or agency" clearly subverts this intent. *In re N.A.C.*, 49 Kan. App. 2d at 710. As another Court of Appeals panel stated when deciding whether to permit a grandmother to appeal a district court's post-termination adoptive placement order:

> "We simply cannot create a new category of appeals so that appeals like this one may be heard. Nor should we. The legislature has worked hard to create a comprehensive Code for Care of Children. It has attempted to balance the protection of the rights of children, parents, and other interested parties against the need for speed sufficient to ultimately allow children to move on and live their lives. We respect the choice the legislature has made here . . . ." *In re A.F.*, 38 Kan. App. 2d at 746.

Those words could not ring more true as to N.A.C. Her case has been pending on appeal longer than it was before the CINC court—despite both appellate courts' concerted efforts to expedite it. N.A.C. had just turned 1 when the CINC court entered the order giving Foster Parents permission to adopt. As of this decision's filing date, N.A.C. is 2 years, 8 months old.

Appellate review can come at a heavy cost for the young children caught up in CINC proceedings. See K.S.A. 2012 Supp. 38-2201(b)(4) ("[T]he time perception of a child differs from that of an adult . . . ."). Through its enactment of the Revised Code, the legislature has balanced whatever perceived value there may be in letting interested parties struggle back and forth among themselves at every stage in post-termination proceedings against the child's recognizable need for permanency. As Chief Judge Malone observed, the legislature could have easily included permanency orders in its list of appealable orders when enacting K.S.A. 2012 Supp. 38-2273(a) if it had weighed the interests differently.

Finally, we would be remiss not to acknowledge the dissent's concern that our holding results in a loss of appellate protection against detrimental placements by the district courts. But our district court judges who are tasked with presiding over these difficult CINC cases are well aware of the stakes. And this recognition was evident when the CINC court commented that both potential families for N.A.C. "have performed well and done what [they] were told. And each of you has just claims. My sympathies are with you for the sufferings you're going through right now, and the fact that one of you is going to get a heartbreaking result here."

Having concluded this court lacks jurisdiction, we do not reach the remaining issues. The Court of Appeals decision is reversed. This appeal is dismissed.

MORITZ, J., not participating.

R. SCOTT MCQUIN, District Judge, assigned.[1]

[1]**REPORTER'S NOTE:** District Judge McQuin was appointed to hear case No. 109,208 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

\* \* \*

JOHNSON, J., dissenting:  I disagree with the majority's interpretation of K.S.A. 2012 Supp. 38-2273(a), and, thus, I cannot join in the dismissal of this case for lack of jurisdiction.

While the majority emphasizes that it is employing the specific-over-general statutory construction rule, it conspicuously ignores the most basic rules. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v.*

*ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Then, if we find that the legislature's language is plain and unambiguous, "we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it." 296 Kan. at 918. The majority leapfrogs over the statutory language to ascertain the meaning of K.S.A. 2012 Supp. 38-2273(a) from the context of other provisions in the child in need of care (CINC) code and then narrows the statutory language to fit its idea of what the law should be. *Cf. State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014) ("Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be . . . .").

K.S.A. 2012 Supp. 38-2273(a) states:  "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." As the majority acknowledges, none of the critical terms in 38-2273(a)—temporary custody, adjudication, disposition, finding of unfitness, termination of parental rights—is statutorily defined. Without legislative definitions, the default should be to use common meanings, especially in statutory provisions that impact a person's fundamental constitutional right to parent his or her child and especially where most persons impacted by the statute are nonlawyers.

Here, the plain language that scuttles the majority's rationale begins with the word "any." If the legislature intended for "temporary custody" to be a term of art referring solely to the one order entered prior to adjudication, the common word to express that meaning would have been "the," *i.e.*, "An appeal may be taken . . . from *the* order of temporary custody." Likewise, if more than one "term of art" temporary custody order was contemplated, the article that would have conveyed that meaning would have been "an," *i.e.*, "An appeal may be taken . . . from *an* order of temporary custody." But the legislature used the adjective "any," so that the only way to get to the majority's result is

29

to read something into K.S.A. 2012 Supp. 38-2273(a) that is not readily found in its plain language, in derogation of our own rules of construction.

Perhaps one could quibble over whether "any" was intended to modify all five types of appealable orders, *e.g.*, "any . . . disposition." But the phrase, "any order of temporary custody," is not amenable to obfuscation and it is sufficient by itself to invest this court with jurisdiction over the instant appeal if we follow our rule of ascribing common meanings to common words. As the majority noted, one component of the order appealed from was the change of custody, placing N.A.C. with the foster parents pending an adoption. Because the CINC court did not have jurisdiction to grant an adoption, its custody order was necessarily temporary, *i.e.*, the order appealed from included an order of temporary custody.

Unlike the majority, I am not persuaded by the argument that the legislature has not amended the statutory provisions governing CINC appeals in response to those Court of Appeals decisions that have narrowly construed the orders that may be appealed. In recent years, this court has preferred plain-language statutory interpretations over court-made policy interpretations. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 527, 154 P.3d 494 (2007) (overruling over 70-year-old caselaw that was contrary to plain statutory language). In *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, Syl. ¶ 2, 214 P.3d 676 (2009), we explained:

> "A history of incorrectly decided cases does not compel the Supreme Court to disregard plain statutory language and to perpetuate incorrect analysis of workers compensation statutes. The court is not inexorably bound by precedent, and it will reject rules that were originally erroneous or are no longer sound."

I am likewise unmoved by the argument that the legislature could easily have signaled its intent to allow post-termination appeals by including in K.S.A. 2012 Supp. 38-2273(a) the newly manufactured term, "permanency orders." That inclusion would be unnecessary where the "permanency order" involves temporary custody if we simply follow our common meaning rules. In contrast, the more compelling argument is that, if the legislature intended the phrase "order of temporary custody" in K.S.A. 2012 Supp. 38-2273(a) to be restricted to one that is entered pursuant to the procedures set forth in K.S.A. 2012 Supp. 38-2243, it would have been an easy matter for the legislature to follow its familiar paradigm of referencing the applicable statute, *i.e.*, "any order of temporary custody made pursuant to K.S.A. 2012 Supp. 38-2243 or amendments thereto."

Finally, from a policy standpoint, I agree with the majority that quickly attaining stability in a child's placement is important. But it is also important that the child have the best possible placement or at least have the means to protect against a detrimental placement. I just hope that the majority's decision to cut off all post-termination appeals does not do more harm than good.