NOT DESIGNATED FOR PUBLICATION

No. 121,639

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.G.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed March 27, 2020. Reversed and remanded with directions.

*Torrance R. Parkins* and *Thomas A. Dower*, of Gilliland Green LLC, of Hutchinson, for appellant natural mother.

*Jennifer L. Harper*, assistant district attorney, and *Keith E. Schroeder*, district attorney, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

PER CURIAM: This is a child in need of care (CINC) case. At the time the CINC petition was filed, N.D.—an alleged father figure to L.G. but with no actual legal relationship—had temporary residential custody of L.G. under the terms of a court order issued in a separate civil domestic case filed by N.D. against L.G.'s natural mother. At some point after the district court adjudicated L.G. a child in need of care and entered an order of disposition granting legal custody of L.G. to the Kansas Department for Children and Families (DCF), the district court entered a new dispositional order granting legal custody of L.G. to natural father, who lives in Arizona. Mother filed a motion to reconsider this new dispositional order, which the court denied. Mother appeals from the order denying her request for reconsideration. For the reasons stated below, we reverse the court's decision to deny Mother's motion to reconsider and remand with directions.

1

Before setting forth the facts relevant to our analysis, we find it necessary to resolve a dispute between the parties about whether we are authorized to review and consider documents added to the appellate record upon a motion by the State after this appeal was filed. Although Mother filed an objection to the State's motion to add the documents, the clerk of the district court added the requested documents to the record on appeal pursuant to Supreme Court Rule 3.02(d) (2019 Kan. S. Ct. R. 21), which provides as follows:

"(d) **Addition to Record on Appeal.** A party may request adding to the record on appeal any part of the entire record under Rule 3.01(a). The following rules apply:

(1) **Addition Must Be Specified With Particularity.** A request under this subsection must specify the addition with particularity. A request for remaining portions of the entire record without particularization is not sufficient.

(2) **Requirement of Transcription.** A court reporter's notes and any court-authorized electronic recording of a court proceeding must be transcribed by a certified court reporter or court transcriptionist before being added to the record on appeal.

(3) **If Record on Appeal Has Not Been Transmitted.** If the record on appeal has not been transmitted to the clerk of the appellate courts, the following rules apply:

(A) The party requesting the addition must serve the request on the clerk of the district court and—if the requested addition is an exhibit that was offered or admitted into evidence and is in a court reporter's custody—on the reporter, who promptly must deliver the exhibit to the clerk of the district court for inclusion in the record on appeal.

(B) The clerk must add the requested addition to the record on appeal. No court order is required.

(4) **If Record on Appeal Has Been Transmitted.** If the record on appeal has been transmitted to the clerk of the appellate courts, the party requesting the addition must file a motion in the proper appellate court. An addition to the record on appeal may be made only on an order of the clerk of the appellate courts or an appellate justice or judge."

As that term is used in Rule 3.02(d), the "entire record" consists of "(1) all original papers and exhibits filed in the district court; (2) the court reporter's notes and transcripts of all proceedings; (3) any other court authorized record of the proceedings, including an electronic recording; and (4) the entries on the appearance docket in the district court clerk's office." Rule 3.01(a) (2019 Kan. S. Ct. R. 19). Relevant here, the record on appeal consists of that portion of the entire record which is requested by a party to be added to the record. Rule 3.01(b)(1).

In this case, the State filed a motion in district court seeking permission to add the following documents to the appellate record:

1. The social file in this case, *In re L.G.*, 2018 JC 275
2. The case file in 2018 DM 493, a domestic case filed by N.D. against Mother seeking primary residential custody of L.G.
3. The case file in 2017 DM 332, a domestic case filed by Mother on behalf of herself and L.G. seeking a no-contact order against N.D.

The social file in this case includes not only the case files in 2018 DM 493 and 2017 DM 332, but the case file in a paternity action relating to L.G. in 2016 DM 015 brought by Mother against N.D. as well. Because the social file includes the case files in the other cases, we only need to address Mother's claim that our review and consideration of the social file in this case is improper.

3

In CINC proceedings, the district court is required by statute to separate court records in the case into two distinct files: the official file and the social file. K.S.A. 2019 Supp. 38-2209(a)(1). The official file consists of "the pleadings, process, service of process, orders, writs and journal entries reflecting hearings held and judgments and decrees entered by the court. The official file shall be kept separate from other records of the court." K.S.A. 2019 Supp. 38-2209(a)(1)(A). The social file consists of "reports and information received by the court, other than the official file. The social file shall be kept separate from other records of the court." K.S.A. 2019 Supp. 38-2209(a)(1)(B).

The social file in this case includes documents filed in case numbers 2018 DM 493, 2017 DM 332, and 2016 DM 15, all of which relate to L.G. The social file also includes reports from the contracting child placement agency, a case plan regarding reintegration, and documents from a case filed by Father in Maricopa, Arizona, related to paternity and custody of L.G. These documents were properly placed in the social file as reports and information received by the court. The social file is part of the entire record in this case. The rules permit the parties to add to the record on appeal any part of the entire record. For this reason, we find it proper to review and consider the social file in our analysis of the issues presented on appeal.

FACTS

L.G. was born in June 2015 in Mesa, Arizona. On August 24, 2015, two months after L.G. was born, Father filed a paternity action in the Superior Court of Arizona in Maricopa County, case No. FC2015-095221 (Arizona paternity case). In the petition, Father alleged he was the natural father of L.G. On September 11, 2015, however, Mother and N.D. filed a voluntary acknowledgment of N.D.'s paternity in the Superior Court of Arizona, Maricopa County. After filing the voluntary acknowledgment of N.D.'s paternity, Mother and N.D. moved with L.G. from Arizona to Kansas.

4

On January 11, 2016, Mother filed a verified petition in Kansas to determine paternity, custody, visitation, and support with regard to L.G. (Kansas paternity case). In the petition, Mother avers that she was married to N.D. at the time of L.G.'s conception and birth and, therefore, N.D. was both the natural and presumed father of L.G.

On February 22, 2016, Father filed a motion to intervene in the Kansas paternity case. In support of his motion, Father referenced the Arizona paternity case and requested to intervene in the Kansas paternity case for the limited purpose of having the Kansas court defer to the Arizona court's order for genetic testing and enforce any orders from Arizona regarding L.G.'s paternity. On March 11, 2016, the court entered the following Agreed Upon Order to Intervene:

"THEREUPON, the parties announce to the Court that they have reached an agreement in the captioned cause.

"WHEREUPON, the Court, after hearing statements of counsel and being duly advised in the premises, accepts said agreement and FINDS as follows:

1. That according to the DNA Test Report dated March 9, 2016, the probability of [Father] being the father of the minor child, [L.G.], is 99.999999997%.
2. That based upon the DNA paternity test results, [Father's] motion to intervene is granted and he is allowed to be a participant in this case."

After this order was entered, Father moved to dismiss the Kansas paternity case. In support of his motion, Father argued that proceedings with regard to custody, visitation, and support were ongoing in the Arizona paternity case, that Mother had hired an attorney to represent her in the Arizona paternity case, and that Mother already had filed responsive pleadings in the Arizona paternity case. Mother opposed dismissal and asked the district court to participate in a conference with the Arizona court as contemplated by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to determine which state had jurisdiction over L.G. Mother noted that she already had requested that

the Arizona court participate in a UCCJEA conference with the Kansas court. On April 1, 2016, the district court granted Mother's request for a UCCJEA conference.

The UCCJEA conference in the paternity cases between the two courts was held by telephone on April 28, 2016. The courts agreed that Arizona was the home state but that Arizona would decline to exercise jurisdiction because Arizona was an inconvenient forum and the Kansas court was the more appropriate court to decide the issues in this matter. On June 1, 2016, N.D. filed a motion in the Arizona paternity case seeking relief from the court's order declining jurisdiction in favor of Kansas. On June 20, 2016, the Arizona court denied N.D.'s motion and found, "[b]ased upon the genetic testing results dated March 9, 2016 and filed March 16, 2016," that N.D. is *not* the natural father of L.G.

On May 1, 2017, Mother filed a petition in case number 17 DM 332 requesting an order of protection from abuse against N.D. (PFA case). In support of her petition, Mother alleged that N.D. sexually assaulted her. On June 6, 2017, the district court issued a final order of protection. On May 25, 2018, the court issued an order in the PFA case granting N.D. parenting time with L.G. every other weekend from 7 p.m. Thursday until 7 p.m. Sunday.

On July 3, 2018, N.D. filed a verified petition in 18 DM 493 stating that he was the natural father of L.G. and requesting the district court enter an order (1) declaring him to be the L.G.'s natural father, (2) awarding he and Mother joint legal custody of L.G. with N.D. having primary residential custody and Mother having reasonable parenting time, and (3) establishing the child support obligations of he and Mother. Notably, N.D. personally represented to the court in his verified petition that he was L.G.'s natural father knowing full well from the Arizona court's June 20, 2016 ruling on N.D.'s own motion that the genetic testing results established he was *not* L.G.'s natural father. On July 11, 2018, the court entered a temporary order regarding custody. In it, the court acknowledged the existing custody and parenting time orders in the PFA case and

ordered those to continue, granted the parties joint legal custody, and granted Mother residential custody and primary residency of L.G., subject to N.D. having liberal and reasonable access to him.

On July 24, 2018, N.D. filed a motion to modify the temporary custody order. In support of his motion, N.D. alleged that Mother currently was spending all of her parenting time with L.G. in Kansas City and that he had received information that Mother intended to relocate to the Kansas City area to reside with the family members of an inmate with whom she currently was in a relationship. N.D. further alleged that Mother failed to provide any written notice of her intent to move L.G. from Hutchinson, which is required by statute.

On August 13, 2018, N.D. filed a motion for an ex parte emergency order to modify custody. In support of his motion, N.D. alleged that Mother, without notice, relocated with L.G. from Hutchinson to the Kansas City area to reside with the family members of an inmate with whom she is currently in a relationship. Given the abrupt nature of the move and the failure of Mother to provide notice to him, N.D. asked the court to grant him primary residential custody of L.G., subject to parenting time by Mother. Mother filed a response in opposition to N.D.'s motion. Significant here, Mother alleged N.D. had no legal relationship to L.G. as shown by documents in the Kansas paternity case, which incorporated the DNA testing done in Arizona proving that N.D. was not the natural father of L.G.

On August 24, 2018, the district court held a hearing on the pending custody motions. N.D. appeared in person and through counsel. Mother appeared pro se. Father appeared through local counsel. Based on the court's review of the file and arguments of counsel, the court found Mother failed to provide the required notices of her move to the Kansas City area. For this reason, the court granted N.D. temporary residential custody of L.G. pending further order of the court. To that end, the court scheduled an evidentiary

hearing for October 24, 2018, to determine issues related to custody, support, and parenting time.

On October 10, 2018, before the scheduled evidentiary hearing in the domestic custody case between N.D. and Mother, the State filed a petition in 2018 JC 275 alleging that L.G. was a child in need of care. Specifically, the petition alleged that Mother and N.D. claimed in their custody case that N.D. was the natural father of L.G., although both of them knew at the time that was not true based on the DNA tests results in the Arizona paternity case. The petition also alleged that N.D. had been given temporary residential custody of L.D. in the domestic custody case to the exclusion of the natural father, despite N.D. having no legal or biological relationship with the child. Based on the allegations against Mother in the domestic custody case, as well as Mother's actions in changing states and preventing a relationship between L.G. and his natural father, the State claimed Mother was not a proper placement for L.G. In the summons attached to the petition, the district court set the first hearing in the case for October 30, 2018. The court also appointed a guardian ad litem to represent L.G.'s interests.

A nonevidentiary pretrial conference was held on October 30, 2018. Mother appeared pro se without counsel. Father appeared in person with counsel. N.D. appeared in person with counsel. L.D. appeared through his guardian ad litem. After hearing unsworn testimony from the parties and counsel, as well as the judge who was presiding over the domestic custody case between N.D. and Mother, the CINC court expressed concern over the current questionable custody arrangement. When Mother began to argue against foster care, the judge firmly responded, "Oh, I'm not talking about foster care." Given the allegations in the CINC petition, the court ordered the case to be supervised by DCF but left L.G. in the temporary physical custody of N.D. as previously ordered in the domestic custody case. The court specifically noted, however, that the placement with N.D. was temporary and "not a permanent deal." The court then immediately directed its attention to making arrangements for Father to have two visits with L.G. before his plane

8

departed back to Arizona the next afternoon. The guardian ad litem ultimately stipulated, and Father entered no-contest statements to the allegations in the CINC petition. The court appointed counsel for Mother and continued the pretrial conference as to her because she was the only party who was not represented by counsel at the pretrial conference.

On November 9, 2018, the district court reconvened the pretrial conference on the CINC petition as to Mother. Mother appeared in person and through her attorney. Mother denied the allegations in the State's petition. Based on its previous findings, the court directed its prior orders to remain in full force and effect, including L.G. to remain in the physical custody of N.D. The court also ordered the CINC case to be set for trial based on Mother's denial; Father's home in Arizona to be assessed consistent with the Interstate Compact for the Placement of Children (ICPC); a frequent, regular visitation schedule to be established by Skype or other means between L.G. and Father; and an early education screening of L.G. to be conducted.

On December 11, 2018, Father filed a motion for immediate review. In the motion, Father requested (1) an out-of-state overnight visit from January 5, 2019, through January 12, 2019, and (2) immediate placement of L.G. with Father in Arizona. In support of the visit, Father said he proposed to N.G. that he fly to Hutchinson to pick up L.G., fly back to Arizona with L.G., and then again accompany L.G. on a return flight to Hutchinson—all at Father's cost. N.G., however, refused his proposal on grounds that it was not in L.G.'s best interests. In support of his request to transfer placement of L.G. from N.D. in Kansas to Father in Arizona, Father argued that N.D. has failed to facilitate frequent and meaningful Skype calls between Father and L.G. Specifically, Father stated that

> "a. Due to [N.D.'s] employment, he is often away from home for the work week and Skype calls can only be accommodated during the weekend.

"b. [F]ather has exercised two Skype calls per week since they were scheduled at the urging of [F]ather and DCF following the hearing.

"c. [N.D.] does not facilitate a developing bond with [F]ather, but merely places the minor child on the call—after which, the minor child will occasionally hang up."

Based on N.D.'s apparent unwillingness to foster a bond between L.G. and his natural father, Father argued N.D. has demonstrated he is not a proper placement for L.G. and that it would be in L.G.'s best interests to place L.G. with Father in Arizona.

On December 13, 2018, the parties convened for trial as to Mother's denial of the allegations in the CINC petition. Mother appeared in person and through counsel. Father appeared through counsel. N.D. appeared in person and through counsel. L.G. appeared through his guardian ad litem. Trial did not go forward, however, because Mother ultimately entered a statement of no contest to the allegations. The district court entered its initial order removing L.G. from the legal custody of Mother and granting legal custody to the Secretary of DCF. In support of its decision, the court found Mother was not an appropriate placement due to previous findings in the domestic custody case between N.D. and Mother (18 DM 493). The court found Father was not available to care for L.G. due to the lack of a developed relationship at this point.

Based on the statements of no contest to the allegations in the petition from Mother and Father, the district court went on to adjudicate L.G. as a child in need of care. Specifically, the court found L.G. was without adequate parental care, control, or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian and is without the care or control necessary for the child's physical, mental, or emotional health. Having dispensed with adjudication, the court went on to address disposition. The court granted DCF legal custody over L.G. and ordered its previous findings and orders would remain in full force and effect, with the exception that L.G. was now deemed to be in an out-of-home placement with N.D. The court found

Mother was not an appropriate placement due to previous findings in the domestic custody case between N.D. and Mother (18 DM 493). The court also found that Father was not available to care for L.G. due to the lack of a developed relationship at this point.

After adjudication and disposition, the district court took up Father's motion for immediate review. The court granted Father's request for an out-of-state visit from January 5, 2019, through January 12, 2019, in Arizona. The court also ordered N.D. to appropriately facilitate Skype calls between Father and L.G. The court did not rule on that portion of Father's motion requesting immediate placement of L.G. with Father in Arizona.

On December 27, 2018, DCF held an initial case planning conference. Both Mother and Father participated in this conference by telephone. As stated in the permanency plan, the permanency objective was reintegration with Mother and/or Father in a safe and stable home environment. As set forth in the plan, the barriers to achieving this objective for Mother were, first and foremost, the allegations in the petition to which she entered a statement of no contest. Specifically, she did not contest that she presented inconsistent statements to the court regarding identification of L.G.'s natural father in an effort to develop a father-son relationship between L.G. and N.D.—to whom L.G. has no biological or legal relationship—to the exclusion of Father. Another barrier set forth in the permanency plan was that Mother lived with her boyfriend, who had a history of criminal offenses that would prohibit reintegration of L.G. into the home. The barriers to achieving reintegration with Father was that his lack of access to L.G. during the first three years of the child's life meant he had yet to create a bond with his son.

On January 25, 2019, Father filed a second motion for immediate review. In the motion, Father requested an order from the court for direct placement of L.G. with Father in Arizona. In support of this request, Father stated that, despite his cooperation and intervention of Kansas agencies on his behalf, no significant progress had been made on

the ICPC assessment in Arizona as ordered by the court on November 9, 2018. Father further stated that the recent out-of-state visit was successful and facilitated significant attachment between Father and L.G. Father maintained a further delay in reintegration will diminish the developing bond between them. Father also noted that his Skype contact recently had been reduced to only one time per week. Father argued that it is in L.G.'s best interests to be placed with him immediately. At the end of the motion, Father requested another out-of-state overnight visit, this time from February 7, 2019, to February 19, 2019.

On February 14, 2019, the district court held a hearing on Father's motion. Father appeared through counsel. Mother appeared in person and through counsel. L.G. appeared through his guardian ad litem. N.D. appeared in person and through counsel. The court approved Father's request for a second out-of-state visit in Arizona but did not rule on the primary request in Father's motion: immediate placement of L.G. with Father in Arizona. On that issue, the court indicated that "[a]ny further orders of the Court will be taken under advisement."

On February 20, 2019, Father moved to extend L.G.'s visit to March 9, 2019, due to L.G. becoming ill during the visit. In support of the motion, Father explained the extension was necessary "in order to facilitate an adequate opportunity for bonding." On February 25, 2019, the district court held a hearing on Father's motion. Father appeared through counsel. Mother appeared in person and through counsel. L.G. appeared through his guardian ad litem. N.D. appeared in person and through his attorney. The district court approved Father's motion to extend the visit and, again, indicated that "[a]ny further orders of the Court will be taken under advisement."

On March 7, 2019, two days before L.G. was scheduled to return from Arizona to Kansas, the district court issued a two-page "Order Regarding Custody" on its own motion without notice to the parties. After setting forth a brief factual and procedural

12

history, the court granted Father custody of L.G. and ordered any parenting time disputes and child support issues to be determined by the court in Arizona. In support of its custody decision, the court noted that it had reviewed pictures of Father's home, his mortgage payments, and his proof of income. From these, the court concluded that Father was a stable man with a stable family and that Father had the means to care properly for L.G.

On April 8, 2019, Mother filed a motion requesting the district court to clarify and reconsider its order. Specifically, Mother challenged the court's legal authority to, on its own motion and without notice to the parties, enter an order modifying custody after adjudication and disposition. Mother also challenged the transfer of jurisdiction to Arizona as a potential violation of the UCCJEA.

On June 20, 2019, the district court entered a three-page "Order Regarding Motion to Clarify and Reconsider." In it, the court clarified that its March 7, 2019 Order Regarding Custody was not issued sua sponte, but instead was an order that granted Father's January 25, 2019 motion for direct placement of L.G. with Father in Arizona. The court explained that it had taken Father's request for direct placement under advisement at the February 14, 2019 motion hearing, which was attended in person by both Mother and her counsel. The district court continued:

> "Any clarification was done at the hearing on April 25, 2019 and the court, after reconsidering the situation, finds that the best interests of the minor child are served by the court's order entered in March.
> At such time as the court receives verification that the court in Arizona is prepared to assume jurisdiction of the child custody case, this matter will be terminated."

Mother appeals from this order.

ANALYSIS

Before we can address the underlying merits of the issue presented on appeal, we first must determine whether we have jurisdiction over the subject matter presented.

*Jurisdiction*

Whether jurisdiction exists is a question of law over which an appellate court has unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743-44, 295 P.3d 542 (2013). The right to appeal is entirely statutory and is not contained in the United States Constitution or Kansas Constitution. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009). Consequently, if the record shows that the appellate court does not have jurisdiction, the appeal must be dismissed. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010).

In order for this court to have subject matter jurisdiction over Mother's appeal, the order being appealed must be one of the specified orders listed in K.S.A. 2019 Supp. 38-2273(a) ("An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights."). In this case, Mother is appealing from the court's decision to deny her motion to reconsider the sua sponte order issued by the court granting Father custody of L.G. Therefore, we must determine whether the court's order qualifies as an order of temporary custody, adjudication, disposition, finding of unfitness, or termination of parental rights.

In making this determination, we find it helpful to begin our analysis by providing a brief overview of the legal process for terminating parental rights in Kansas. This

process is set forth in the Revised Kansas Code for Care of Children (the Code), K.S.A. 2019 Supp. 38-2201 et seq., and is initiated upon the filing of a petition that alleges a child to be a child in need of care. Once a CINC petition is filed, the case evolves based on individual circumstances that may or may not develop in the case. Relevant to the issue presented on appeal, the statutory scheme that governs this evolution is summarized below, prefaced by two statutory definitions that also are relevant to our analysis.

**Custody.** The term "custody" is defined in the Code to mean "the status created by court order or statute that vests in a custodian, whether an individual or an agency, the right to physical possession of the child and the right to determine placement of the child, subject to restrictions placed by the court." K.S.A. 2019 Supp. 38-2202(h).

**Placement.** The term "placement" is defined in the Code to mean "the designation by the individual or agency having custody of where and with whom the child will live." K.S.A. 2019 Supp. 38-2202(z).

**Temporary Custody.** Upon notice and hearing, the district court is authorized to enter an order of temporary custody, which shall remain in effect until modified or rescinded by the court or until an order of adjudication is entered but shall not remain in effect for more than 60 days unless good cause is shown. K.S.A. 2019 Supp. 38-2243(g)(2).

**Adjudication.** Adjudication is the process of deciding whether the State has presented clear and convincing evidence to establish that a child is a "child in need of care," as that term is defined by statute. See K.S.A. 2019 Supp. 38-2202(d); K.S.A. 2019 Supp. 38-2250; K.S.A. 2019 Supp. 38-2251.

**Disposition.** After proper notice and due consideration of evidence presented by all interested parties at an evidentiary hearing, the district court is authorized to enter an

15

order of legal custody, which continues until further order of the court. K.S.A. 2019 Supp. 38-2253; K.S.A. 2019 Supp. 38-2254; K.S.A. 2019 Supp. 38-2255.

**Rehearing.** After the entry of any dispositional order, the district court may reconsider the matter of legal custody on its own motion or the motion of a party or interested party. Upon proper notice and rehearing, the court may rescind any prior dispositional order and make any other dispositional order authorized by the Code, with one stated exception. K.S.A. 2019 Supp. 38-2256.

It is within this statutory scheme that the district court in this case issued the following orders:

October 30, 2018:  After hearing from the parties and counsel at a pretrial hearing in the CINC case, the district court took judicial notice of the court's existing order in 18 DM 493 (the custody case between N.D. and Mother) granting temporary residential custody of L.G. to N.D. pending further order of the court and ordered that temporary order of custody to remain in place. (Order of Temporary Custody, K.S.A. 2019 Supp. 38-2243[c]).

December 13, 2018:  The district court entered an order adjudicating L.G. a child in need of care. (Order of Adjudication, K.S.A. 2019 Supp. 38-2251).

December 13, 2018:  The district court entered an order of disposition granting legal custody of L.G. to DCF. (Order of Disposition, K.S.A. 2019 Supp. 38-2255).

March 7, 2019:  The district court reconsidered the matter of legal custody on its own motion, rescinded its prior dispositional order granting legal custody to DCF, and entered a new dispositional order granting legal custody of L.G. to Father. (Order of Rehearing on Disposition, K.S.A. 2019 Supp. 38-2256).

16

June 20, 2019: In response to Mother's motion, the district court enters an "Order Regarding Motion to Clarify and Reconsider" clarifying that it had granted Father's motion for custody and denying Mother's request for reconsideration of its custody decision.

Mother appeals from the district court's order denying her request to reconsider its decision to grant legal custody of L.G. to Father in Arizona. The court's March 7, 2019 decision to rescind its prior dispositional order granting legal custody to DCF and enter a new dispositional order granting legal custody of L.G. to Father is authorized by K.S.A. 2019 Supp. 38-2256. Our Supreme Court has held that nothing in the CINC jurisdictional statute prevents an appeal from any dispositional orders entered after rehearing. *In re N.A.C.*, 299 Kan. 1100, 1120, 329 P.3d 458 (2014) (citing K.S.A. 2019 Supp. 38-2273[a]). Accordingly, we retain jurisdiction over this appeal.

*Sufficiency of the evidence*

Having resolved the issue of jurisdiction, we turn to Mother's claim that the district court should have granted her motion to reconsider because there was insufficient evidence to support the district court's decision to enter a new dispositional order granting legal custody of L.G. to Father in Arizona. In support of her claim, Mother argues that the court never held an evidentiary hearing in the CINC case and that K.S.A. 2019 Supp. 38-2255(a)(5) requires the court to consider a number of factors, including "the evidence received at the dispositional hearing" before entering an order of disposition regarding legal custody. But Mother's argument is based on a faulty premise. The fact that no evidence was introduced in the form of testimony or exhibits at the dispositional hearing, however, does not necessarily mean that there is insufficient evidence to support the district court's hearing on the issue of disposition. This is especially true here, where the court expressly took judicial notice of the several other cases pending between Mother and N.D. where the issue of custody of L.G. had been, or currently was being, litigated.

17

As comprehensively set forth in the fact section above, there is more than sufficient evidence to support the district court's decision to enter a new dispositional order granting legal custody of L.G. to Father in Arizona.

*Due process*

Mother argues the district court deprived her of her right to due process of the law by denying her motion to reconsider because the court entered a new dispositional order granting legal custody of L.G. to Father in Arizona without providing her with notice and an opportunity to be heard. We agree.

As set forth above, K.S.A. 2019 Supp. 38-2256 provides:

"After the entry of any dispositional order, the court may rehear the matter on its own motion or the motion of a party or interested party. Upon notice, pursuant to K.S.A. 2019 Supp. 38-2254, and amendments thereto, and after the rehearing, the court may enter any dispositional order authorized by this code, except that a child support order which has been registered under K.S.A. 2019 Supp. 38-2279, and amendments thereto, may only be modified pursuant to K.S.A. 2019 Supp. 38-2279, and amendments thereto."

With regard to notice, the statute refers to K.S.A. 2019 Supp. 38-2254, which provides:

"(a) Unless waived by the persons entitled to notice, the court shall require notice of the time and place of the dispositional hearing be given to the parties and interested parties.
"(b) The court shall require notice and the right to be heard as to proposals for living arrangements for the child, the services to be provided the child and the child's family, and the proposed permanency goal for the child to the following:
(1) The child's foster parent or parents or permanent custodian providing care for the child;

18

(2) preadoptive parents for the child, if any;

(3) the child's grandparents at their last known addresses or if no grandparent is living or if no living grandparent's address is known, to the closest relative of each of the child's parents whose address is known;

(4) the person having custody of the child; and

(5) upon request, by any person having close emotional ties with the child and who is deemed by the court to be essential to the deliberations before the court.

"(c) The notice required by this subsection shall be given by first class mail, not less than 10 business days before the hearing.

"(d) Individuals receiving notice pursuant to subsection (b) shall not be made a party or interested party to the action solely on the basis of this notice and the right to be heard. The right to be heard shall be at a time and in a manner determined by the court and does not confer an entitlement to appear in person at government expense.

"(e) The provisions of this subsection shall not require additional notice to any person otherwise receiving notice of the hearing pursuant to K.S.A. 2019 Supp. 38-2239, and amendments thereto."

Upon review of the record, we find no evidence that Mother received notice and an opportunity to be heard at a dispositional hearing on the issue of transferring legal custody of L.G. from DCF in Kansas to Father in Arizona. This is not to say that the district court did not have the authority to enter such an order; Father is L.G.'s natural parent. But before entering the order, the statute requires the constitutional safeguards of notice and an opportunity to be heard. For this reason, we reverse the court's decision to deny Mother's motion to reconsider and remand with directions for the court to schedule a rehearing on disposition hearing as contemplated by K.S.A. 2019 Supp. 38-2256 and to provide the requisite notice for that hearing to all necessary parties as set forth in K.S.A. 2019 Supp. 38-2254. At the rehearing on disposition of legal custody, the court is permitted by statute to enter any dispositional order authorized by the Code and should file a journal entry setting forth findings of facts supported by substantial competent evidence in the record and conclusions of law based on those findings of fact in order to support its ultimate decision on Mother's motion for rehearing.

19

Reversed and remanded with directions.